ESTATE OF OLSON: UNITED STATES TREASURY DEPARTMENT, Respondent, vs. LA CROSSE TRUST COMPANY, Appellant.

*October 13—November 8, 1955.*

202

For the appellant there were briefs by *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, and *Michael, Spohn, Best & Friedrich* of Milwaukee, attorneys, and *W. C. Brunsell* and *Richard D. Hobbet* both of Milwaukee, of

counsel, and oral argument by *Mr. Thomas H. Skemp* and *Mr. Hobbet.*

For the respondent there were briefs by *H. Brian Holland,* assistant United States attorney general, and *Ellis N. Slack, Hilbert P. Zarky,* and *Karl Schmeidler,* attorneys of the department of justice, and *George E. Rapp,* United States attorney, and *James H. McDermott,* assistant United States attorney, and oral argument by *Mr. Zarky.*

CURRIE, J.    In order to bring into sharper focus the basis of the government's claim for additional federal income taxes for the year 1950, we set forth below the computations of Olson's deductible loss shown in his 1950 return and the government's adjustments therein:

| Explanation per return | Figures per return | Figures as adjusted by the government |
|---|---|---|
| Cash paid out for Nelson Garment Company | $62,432.65 | $62,432.65 |
| Recovery in 1950 | 26,870.04 | 49,098.54 |
| Balance—Total loss | $35,562.61 | $13,334.11 |
| Loss: Deducted on prior returns | 35,317.44 | 40,955.05 |
| Balance loss | $    245.17 | Gain $27,620.94 |
| Attorney's fee re: Nelson Garment Company Recovery | $ 1,000.00 | $ 1,000.00 |
| | Loss $ 1,245.17 | Gain $26,620.94 |

The principal contention advanced on this appeal in behalf of the appellant administrator is that the $62,432.65 shown above as having been paid out by Olson for the Nelson Garment Company was in reality a capital investment and not a debt. Assuming such premise to be correct, there should

be added to such $62,432.65 the amount of $83,650, which Olson had paid for his stock in the corporation and to cover the 1927 stock assessment, to arrive at a total capital investment of $146,082.65. The recovery in 1950 of the value of the corporate assets transferred to Olson would then constitute a return of capital, the cost basis of which would be $146,082.65. On such basis, accepting the government's figure of $49,098.54 as the amount of such recovery and that there should be deducted from the $146,082.65 the full amount of the $40,955.05 deducted on prior returns, Olson would have sustained a loss in 1950 of approximately $56,000 instead of the taxable gain of $26,620.94 claimed by the government, and no further federal income tax would be due from his estate.

If the item of $62,432.65 be held to be a debt and not part of Olson's capital investment it is clear that the $70,000 which Olson had invested in the stock of the corporation prior to 1931, together with the $10,000 stock assessment paid by him in 1927, could not be taken into consideration in determining whether he realized a taxable gain, or sustained a loss, as a result of the 1950 recovery. This is because the corporation had become insolvent in the early 1930's, and the amount of Olson's capital investment in the corporation should have been deducted as a loss for federal income-tax purposes at that time, and could not be deducted in 1950. The fact that taking such deduction during the depth of the depression probably would not have been of any benefit tax-wise to him is wholly immaterial with respect to the legal issues presented on this appeal.

The record before us contains no formal findings of fact. However, this court recently in *Estate of Wallace* (1955), 270 Wis. 636, 72 N. W. (2d) 383, reiterated the rule announced in prior decisions that, where no formal findings of fact are made, or the findings do not cover a point in issue, facts which are stated in the trial court's memorandum deci-

sion will be accorded the same weight as if contained in formal findings. Sec. 270.33, Stats., requires that, in every case where a trial is had of an issue of fact by the court, the court "shall separately state the facts found and the conclusions of law thereon." Where a trial court files no formal findings of fact apart from the memorandum decision, in order to comply with the requirements of sec. 270.33, a portion of the memorandum decision should be set apart and expressly designated as "Findings of Fact" in which are stated the facts as found by the court. *Estate of Vogel* (1951), 259 Wis. 73, 75, 47 N. W. (2d) 333. The able and thorough memorandum decision of the learned trial judge in the instant case was of great benefit to this court on this appeal, and the failure to strictly comply with the provisions of sec. 270.33 in no way added to the burdens of this court or prejudiced the rights of the appellant. Our only purpose in alluding to the matter is to again call the attention of trial courts to this statute in the hope of improving future practice.

The learned trial court's memorandum decision held that the administrator, by reason of Olson having treated his payment of the corporation's debts in his prior returns as creating a debt to him, together with the fact that he had been in control of the corporation's bookkeeping after it ceased active manufacturing and upon such corporation books such payments were entered as reflecting an indebtedness owing by the corporation to Olson, was estopped to claim that such aggregate payments of $62,432.65 did not constitute a debt. Included in such memorandum decision is this statement, "we find no evidence in this case to indicate anything on the part of Mr. Olson to sufficiently sustain any holding that his payments to the banks for the corporation were additions to capital." We deem that such quoted statement is the equivalent of a definite finding of fact that the $62,432.65 paid out by Olson for the corporation created a debt from

the corporation to him and did not constitute a capital investment.

The great weight of the evidence amply sustains such finding without resort to the principle of estoppel. Both Olson and the corporation throughout consistently treated such disbursements by Olson as creating a creditor-debtor relationship. This is manifest from Olson's federal income-tax returns filed for the period of 1933 to 1950, inclusive, and the entries made in the books of account of the corporation. Then there are the recitals contained in the minutes of the special stockholders' meeting of March 7, 1950, at which the turning over of all corporate assets to Olson was authorized. Further supporting evidence is the fact that the corporation recognized that Olson was entitled to interest on his advances in behalf of the corporation and interest was credited to his account on the corporation's books. At the time Olson made by far the major portion of the payments for the account of the corporation aggregating $62,432.65 he owned only 400 of the 990 shares of outstanding common stock of the corporation and only the common stock, and not the preferred stock, possessed voting rights. Therefore, he stood in the position of a minority stockholder so far as being able to control the management of the corporation was concerned. This is an additional reason why he would intend such advances to be loans rather than donations to capital, and affords further support to the trial court's finding of fact that the advances created a debt.

Counsel for the administrator seek to escape from the effect of such finding of fact by invoking a rule of law which they contend is laid down in the following federal income-tax cases: *Tuttle v. United States* (Ct. Cl. 1951), 101 Fed. Supp. 532; *American Cigar Co. v. Commissioner* (2d Cir. 1933), 66 Fed. (2d) 425, certiorari denied, 290 U. S. 699, 54 Sup. Ct. 209, 78 L. Ed. 601; and *Reading Co. v. Commis-*

*sioner* (2d Cir. 1942), 132 Fed. (2d) 306. The rule, which such counsel maintain is established by these cases, is that a stockholder cannot make a loan to a corporation when there is no reasonable expectation of repayment and treat the same for federal income-tax purposes as creating a debt, but that the same must be deemed to have been a contribution to capital.

In *Tuttle v. United States, supra,* the taxpayer held stock which had cost him approximately $146,000 in a holding company which owned the capital stock in six national banks which were determined by the United States comptroller of the currency to be insolvent in 1933. Suit was instituted against the taxpayer and other stockholders of the holding company to enforce a stock assessment in behalf of the banks. This suit was compromised by the taxpayer in 1934 contributing approximately $15,000 to the receivers of the banks for which he received a "settlement fund certificate" for such amount entitling him to recovery if the assets of the banks liquidated for enough to pay depositors in full and pay off the subscribers of a subsequently organized liquidating corporation. Because the certificate bore interest the taxpayer later actually received back more than the face of the certificate. In his federal income-tax return for 1933 taxpayer charged off the original cost of his stock in the holding company, but for approximately $90,000 of such charge-off he received no tax benefit, and on his 1934 return he deducted the amount he had contributed to the settlement fund. The recovery payments on the certificate were received by him in two instalments, one in 1942 and the other in 1944, and he reported such amounts in his returns for those years as ordinary income and paid tax thereon. Later he discovered his error, filed a claim for refund, and then instituted suit to recover back the amount of tax paid on such recoveries. The United States court of claims permitted the taxpayer to recover on the ground that his contribution in 1934 to the

settlement fund was in reality in the nature of a stock assessment. Therefore, he was entitled to the benefit of the $90,000 portion of the 1933 charge-off for which he had received no tax benefit and which far exceeded the amounts recovereα on the certificate.

We consider that the holding in *Tuttle v. United States, supra,* is distinguishable from the instant case because the United States court of claims found as a fact that the taxpayer's contribution to the settlement fund constituted a payment in the nature of a stock assessment, and, therefore, a contribution to capital.

The attorneys for the administrator place great reliance on the decision in *American. Cigar Co. v. Commissioner, supra.* In that case the taxpayer corporation owned a "large fraction" of the common stock of another corporation which was in serious financial difficulties. The taxpayer was reluctant to let such latter corporation go into receivership and from time to time advanced large sums to it to enable it to meet operating expenses and pay interest on its bonds and took notes for such advances. The gist of the circuit court of appeals decision in that case on the issue before us in the instant case is as follows (66 Fed. (2d) 427) :

"The taxpayer takes the position that the notes taken on account of the advances were ascertained to be worthless at the very time the advances were made. The board [of tax appeals] has found as a fact that the petitioner made the advances fully believing that the obligations they created were worthless and uncollectible, and there is evidence to support such a finding. Therefore, according to the petitioner's own contention and the finding of the board, these sums were advanced in the belief that they would never be repaid, and the notes which the petitioner took were believed to be uncollectible. Such advances, made with the belief they would not be repaid, are in the nature of gifts, and are not deductible as bad debts. . . . The advances were in reality contributions to the capital of the Havana Company, in which the peti-

tioner was a stockholder. Contributions to capital cannot be deducted as debts ascertained to be worthless. . . .

". . . The petitioner claims these debts were known to be worthless when they arose. If so, as we have held, they were nondeductible. If not, there is no evidence when they were ascertained to be worthless, and there would be no way to determine the years in which the deductions might be allowable, nor is there satisfactory proof that they were ever charged off."

In *Reading Co. v. Commissioner, supra,* the taxpayer corporation made advances to two insolvent subsidiary corporations in 1936 and 1937 and promptly charged them off in its federal income-tax returns for such years as bad debts. At the time the taxpayer made such advances it knew they could never be repaid. The court held that such deductions were improper and stated (132 Fed. (2d) 310) :

"Advances made in such circumstances have been aptly characterized as being either gifts or contributions to capital but not as debts. See *American Cigar Co. v. Commissioner,* 2 Cir. 66 F. (2d) 425, 427. In *Eckert v. Burnet,* 283 U. S. 140, 141, 51 S. Ct. 373, 75 L. Ed. 911, the supreme court said that, where a debt is worthless when acquired, there is nothing to charge off, and that the words of the statute cannot be taken to include a case of that nature."

We consider that the authority of the *American Cigar Co.* and *Reading Co. Cases* should be limited to a fact situation where a taxpayer-stockholder makes advances to the corporation knowing that he in all likelihood will never be repaid and in the same years when the advances are made attempts to charge the same off on his federal income-tax returns as "bad debts" and the government takes exception thereto. Clearly such advances partake of the nature of gifts, and whether they may also be deemed contributions to capital is wholly immaterial in such a fact situation. Where, as in the instant case, the advances are considered both by the

stockholder and the corporation not to be in the nature of a contribution but to create a debt, and thereafter the corporation turns over assets to be applied on such indebtedness, we see no justification for invoking an arbitrary rule of law that such advances must be deemed to be contributions to capital and the recovery to be in the nature of a return of capital.

A better rule would seem to be that, in every case where a question arises as to whether an advance by a stockholder to a corporation in financial difficulty constitutes a contribution to capital or the creation of a debt, such question be resolved as an issue of fact and not of law. The recent decision of the United States tax court in *Schnitzer v. Commissioner* (1949), 13 T. C. 43, 60, affirmed *per curiam,* 183 Fed. (2d) 70, certiorari denied, 340 U. S. 911, 71 Sup. Ct. 291, 95 L. Ed. 658, makes it clear that such is the correct rule to be applied in cases of this kind. We. quote from such decision as follows:

"Whether a stockholder's advance of funds to his corporation is to be deemed a capital contribution or a loan is not a new question. It has arisen tax-wise in issues involving, as here, the proper treatment of unrecovered advances as a bad debt or as a capital loss deduction, . . .

"This question is one of fact. *Cohen v. Commissioner* [(2d Cir. 1945), 148 Fed. (2d) 336], *supra.* And in deciding whether or not a debtor-creditor relation resulted from advances, the parties' true intent is relevant. . . . Bookkeeping, form, and the parties' expressions of intent or character, the expectation of repayment, the relation of advances to stockholdings, and the adequacy of the corporate capital previously invested are among circumstances properly to be considered, for the parties' formal designations of the advances are not conclusive, *United States v. South Georgia Ry. Co.* [(5th Cir. 1939) 107 Fed. (2d) 3], *supra,* but must yield to 'facts which even indirectly may give rise to inferences contradicting' them. *Cohen v. Commissioner, supra.*"

In the recent case of *Scovill Mfg. Co. v. Fitzpatrick* (2d Cir. 1954), 215 Fed. (2d) 567, 570, the court unequivocally stated, "and it is of course clear that loans to an insolvent may support a deduction if repayment was reasonably expected." It is interesting to note that one of the three judges who participated in the decision was Judge HARLAN, now a member of the United States supreme court.

When the limit of Olson's unconditional guaranty to the bank was raised by him from $35,000 to $75,000 on March 22, 1928, the Nelson Garment Company was unquestionably solvent. The corporation's indebtedness to the bank on that date was $20,000, later in 1928 it rose to $75,000, and it never declined below $30,000 at any time prior to June 27, 1933, when Olson was called upon by the bank to make good on his guaranty. Therefore, the fact that the corporation was insolvent when Olson issued his own notes in 1933 to cover its indebtedness to the bank, and when Olson later made the payments to the bank on such notes and renewals of the same, would be immaterial on the question of whether such payments created a debt or were contributions to capital. This is because the liability on the guaranty pursuant to which such payments were made was incurred at a time when the corporation was solvent and there was reasonable expectation that it would be able to repay its loans to the bank. For authorities on this point, see *Shiman v. Commissioner* (2d Cir. 1932), 60 Fed. (2d) 65; 5 Mertens, Law of Federal Income Taxation, p. 413, sec. 30.11, and 1955 cumulative pocket supplement thereto, p. 54, sec. 30.11, n. 87.

For the reasons hereinbefore set forth it is apparent that this court finds no merit in the contention that it is incumbent upon us to hold, as a matter of law, that Olson's advances in behalf of the corporation constituted contributions to capital and not a debt as found by the trial court. However, counsel for the administrator maintain that, even

though we should reach such conclusion, the administrator is entitled to relief on this appeal because of errors in the government's computation of the amount of the capital gain Olson realized out of his 1950 recovery from the assets transferred to him by the corporation. Such alleged errors consist of the following:

(1) Overstatement of the amount of the recovery because of failure to deduct the amount of the outstanding McKenzie mortgage then held by Olson;

(2) Failure to deduct as an item of cost the amount of $3,650 paid out by Olson in the period of 1946 to 1950 to acquire additional shares of stock of the corporation;

(3) The inclusion in the amount of $40,955.05 listed by the government as "deducted on prior returns" of $13,416.98 deducted on such returns by Olson as interest and not as "bad debts." (He actually deducted $15,556.62 of interest but only $13,416.98 resulted in a tax advantage to him.)

On December 6, 1930, the corporation executed and delivered a mortgage and mortgage note to one McKenzie for $15,000 in consideration for a loan of that amount from McKenzie. McKenzie assigned the mortgage and note to Batavian National Bank of La Crosse on March 2, 1940, and on October 9, 1942, the latter assigned the mortgage and note to Olson. The last-mentioned assignment contains no statement as to the balance owing on such mortgage indebtedness at the time of its transfer to Olson. The only proof of the amount Olson paid for such assignment to him is a check which Olson drew on his personal checking account with the Exchange State Bank dated October 6, 1942, in the amount of $6,500 payable to "R. E. McKenzie or Batavian Nat. Bank." On the same day such check was issued Olson borrowed $6,500 from the Exchange State Bank. Olson retired such loan by 13 instalment payments commencing November 5, 1942, and extending to December 3, 1943. On each date that Olson made a payment on the note the Nelson

Garment Company issued its own check to Olson for the identical amount of Olson's payment on the note. Thus the corporation reimbursed Olson for the $6,500 paid by him to acquire the mortgage, and no deduction should be made from the $49,098.54 recovery figure because of the existence of the unsatisfied McKenzie mortgage.

At the trial Attorney T. H. Skemp testified as a witness for the administrator and related how, commencing in 1946, he, as Olson's attorney, had purchased all of the preferred and common stock owned by persons other than Olson, except 225 shares of the common, owners of which refused to sell. The motive which actuated Olson in purchasing such additional shares of stock appears from the following extract of Mr. Skemp's testimony:

"It was almost a religion with this fellow [Olson] that nobody would be hurt by any of his own actions. He realized the mistake he made in getting into the manufacturing business with Nelson Garment Company and that it had been a tremendous load on him, and even at the end of the rope he wanted to assume the responsibilities of restoring friendships that he felt had been alienated by his operations in Nelson Garment Company over the years."

It is, therefore, apparent that the $3,650 which Olson paid to acquire such additional shares was not expended for any business purpose, but for personal reasons dictated by his own conscience. No authority has been cited by counsel for the administrator in support of their contention that such $3,650 should be deducted from the amount of the 1950 recovery to determine the amount of Olson's taxable gain thereon. Inasmuch as no claim is made that such expenditure was a necessary incident of Olson securing such recovery, which it clearly was not, it properly was excluded from consideration in the government's computation.

Sec. 22 (b) (12) of the Internal Revenue Code, 26 USCA, provides: Gross income does not include "income

attributable to the recovery during the taxable year of *a bad debt, prior tax, or delinquency amount,* to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount." (Italics supplied.) "Recovery exclusion" is thereafter defined to mean the amount of a deduction taken for a bad debt, tax, or delinquency amount on a prior return which did not result in a reduction of the taxpayer's income tax. Counsel for the administrator urge that, inasmuch as the deduction Olson took on his prior returns for interest paid on account of the corporation was not deducted as *"a bad debt, prior tax, or delinquency amount,"* no part of the such prior deductions for interest should have been included by the government in its computation of the item of "loss deducted on prior returns." If reference is had to the comparative table appearing in the forepart of this opinion it will be readily seen that any decrease in such item of $40,955.05 in the government's computation would result in a decrease of the taxable gain realized upon the 1950 recovery.

The decision of the United States supreme court in *Dobson v. Commissioner* (1943), 320 U. S. 489, 64 Sup. Ct. 239, 88 L. Ed. 248, completely refutes such argument advanced in behalf of the administrator. We can best state the holding of the *Dobson Case* by quoting the summary thereof contained in the decision of the court of claims in *Tuttle v. United States, supra* (101 Fed. Supp. 535) :

"That section [22 (b) (12) of the Internal Revenue Code] says that recovery of bad debts, prior taxes, and delinquency amounts should be excluded from gross income to the extent to which the deductions allowed on such transactions had not resulted in a reduction of the taxpayer's income tax. The supreme court of the United States, in *Dobson v. Commissioner,* 320 U. S. 489, 64 S. Ct. 239, 88 L. Ed. 248, held that such a doctrine had been extant before the 1942 congressional enactment, and that the statute did not restrict its application to only the three kinds of losses

named in the statute. Following the Dobson decision, on May 10, 1945, the commissioner of internal revenue issued T. D. 5454 which expressly extended the applicability of the tax-benefit doctrine of the statute to 'all other losses, expenditures . . . made the basis of deductions from gross income for prior taxable years' with certain exceptions not here relevant."

The $49,098.54 worth of assets were turned over to Olson by the corporation to apply on the debt owing to him for the interest as well as principal which he had paid on account of corporate debts. Therefore, the total of $62,432.65 of payments so made by Olson must be reduced by not only that part of the same, which he charged off on prior returns as to which he realized a tax benefit, but also by the amount of such interest that he deducted on such prior returns which resulted in a tax saving to him.

The appellant administrator has failed to substantiate his claims of error in the government's computation of the amount of taxable gain realized by Olson from the 1950 recovery, and the judgment of the trial court must be affirmed.

*By the Court.*—Judgment affirmed.