HOCHGURTEL, and others, Plaintiffs, v. SAN FELIPPO, and
others, Defendants: HENNINGFELD, Defendant-Re-
spondent: MILWAUKEE MUTUAL INSURANCE COM-
PANY, Defendant-Appellant. [Case No. 75-311.]
BIESIADNY, and others, Plaintiffs, v. HENNINGFELD, and
others, Defendants: HENNINGFELD, Defendant-Re-
spondent: MILWAUKEE MUTUAL INSURANCE COM-
PANY, Defendant-Appellant. [Case No. 75-312.]

*Nos. 75-311, 75-312. Argued March 30, 1977.—
Decided May 17, 1977.*
(Also reported in 253 N.W.2d 526.)

72

74

For the appellant Milwaukee Mutual Insurance Company there was a brief by *L. William Staudenmaier* and *Cook & Franke, S. C.* and oral argument by *Mr. Staudenmaier,* all of Milwaukee.

For respondents Peggy M. Hochgurtel, et al., there was a brief by *deVries, Vlasak & Schallert, S. C.* and oral argument by *Stephen C. deVries,* all of Milwaukee.

For respondents Dominic San Felippo, et al., there was a brief by *Nonald J. Lewis, John E. Schapekahm* and *Kasdorf, Dall, Lewis & Swietlik,* and oral argument by *Nonald J. Lewis.*

For the respondent Robert H. Henningfeld there was a brief by *Kluwin, Dunphy, Hankin & McNulty,* attorneys, of Milwaukee, and *Joseph E. Boyle,* of counsel, of Burlington, and oral argument by *John Kluwin.*

For respondents Michael Biesiadny there was a brief by *Howard A. Davis* and *Habush, Gillick, Habush, David & Murphy,* and oral argument by *Howard A. Davis,* all of Milwaukee.

ABRAHAMSON, J.   Shortly after he became sixteen years of age Stephen Henningfeld obtained a Wisconsin driver's license with the sponsorship of his father, Robert Henningfeld. During August 1970, Stephen, age sixteen

years and ten months, was employed as he had been in the two previous summers, on a sod farm owned by Joseph and Dominic San Felippo. On August 25, 1970, while driving a 1965 Ford, series F–750, cab over engine truck owned by the San Felippo brothers and while making a delivery of sod, Stephen was involved in an accident in western Milwaukee county. Mrs. Peggy Hochgurtel and her children sustained injury when the truck landed on the Hochgurtel auto. Michael Biesiadny, who was a passenger in the truck and a fellow employee of Stephen at the sod farm, was also injured in the mishap. Subsequently, the Hochgurtels and Michael Biesiadny filed separate suits to recover for their injuries and losses. Robert Henningfeld and his insurance carrier, Milwaukee Mutual Insurance Company, the appellant here, were named as defendants in both actions under the authority of sec. 343.15(2), Stats. [1]

The Hochgurtel and Biesiadny actions were consolidated for purposes of trial, and the issue of Milwaukee Mutual's coverage of Robert Henningfeld (as a sponsor of Stephen) was tried separately. At the trial the court determined that the truck was a non-owned automobile within the terms of the policy, and therefore the policy provided coverage. This appeal followed. Additional facts are set forth below.

There are three issues on appeal:

I. Did the trial court err in determining that the San Felippo truck had only four wheels?

---

[1] Sec. 343.15(2), Stats.:

"(2) Any negligence or wilful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways is imputed to the parents where both have custody and either parent signed as sponsor, otherwise, it is imputed to the adult sponsor who signed the application for such person's license. The parents or the adult sponsor is jointly and severally liable with such operator for any damages caused by such negligent or wilful misconduct."

II. Did the trial court err in determining that the San Felippo truck was not furnished or available for the regular use of Stephen Henningfeld, a resident of the named insured's household?

III. Did the trial court err in failing to state separately its findings of fact and conclusions of law?

## I.

The appellant contends that the trial court erred in deciding that the sod truck was a four-wheel vehicle under the policy's terms. The language of the policy which is pertinent is as follows:

". . . 'non-owned automobile' means a four wheel land motor vehicle or trailer not owned or furnished or available for the regular use of either the named insured or any resident of the same household, other than a temporary substitute automobile."

If the truck is a four-wheel vehicle it is a "non-owned automobile," assuming other conditions are met, and there is coverage; if it is a six-wheel vehicle (not a "non-owned automobile"), there is no coverage.

The issue whether the sod truck is a four-wheel vehicle has been before this court previously. In *Biesiadny v. Henningfeld,* 65 Wis.2d 88, 90, 221 N.W.2d 690 (1974), Milwaukee Mutual appealed a denial of summary judgment, arguing that the sod truck had six wheels and was therefore not within the policy definition of a "non-owned automobile." The photographs of the sod truck clearly showed side-by-side tires on the rear wheels. It was—and is—conceded the truck has six *tires,* two front, four rear. The question then and now is whether the truck has four wheels or six wheels. This court affirmed the trial court's order denying the motion for summary judgment, holding that more evidence was

needed to determine the definition of wheels and the design of the sod truck.

Based on this court's decision in *Biesiadny*, the trial court permitted witnesses from the trucking industry to describe the "cast spoke wheels" on the rear of the sod truck and to compare that type of wheel to the "disc wheel" commonly found on passenger automobiles. One witness brought into the courtroom an entire assembly including tires, rims, a spacer which separates the rims and a cast spoke wheel. Photographs of the assembly are in the record. Pictures from trade publications of different types of wheels were also introduced into evidence.

Milwaukee Mutual does not quarrel with the testimony of the witnesses that from a technical and industrial standpoint this truck has four wheels. Milwaukee Mutual argues that the trial court should not have relied on these witnesses to make a finding as to the meaning of the word "wheel," but rather the judge should have determined what the word "wheel" meant to the average layperson. Mutual correctly notes that in interpreting and construing the policy " 'the ultimate objective is to ascertain the true intention of the parties' " and that "[w]ords used in insurance contracts '. . . are to be given the common and ordinary meaning which they have in the minds of the average layman.' " *Schmidt v. Luchterhand*, 62 Wis.2d 125, 132–133, 214 N.W.2d 393 (1974).

The general rule is to construe statutory language according to the popular, common and approved usage. Sec. 990.01(1), Stats.; *State Bank of Drummond v. Nuesse*, 13 Wis.2d 74, 78, 108 N.W.2d 283 (1961). In *H. Samuels Co. v. Department of Revenue*, 70 Wis.2d 1076, 1085, 1086, 236 N.W.2d 250 (1975), this court had

to interpret sec. 77.51(27), Stats., that referred to an article produced by a "process regularly regarded as manufacturing." The Department of Revenue contended that the phrase "process popularly regarded as manufacturing" should be interpreted according to the views taken by "the man on the street." The court noted that no effort was made to show the views of "the man on the street" and that rational decisions to determine the meaning of a statute cannot be reached using such an approach. The court held that the statute could only be "applied with reference to the opinions of those conversant with the subject matter involved." *See also Lewiston v. Mathewson*, 78 Ida. 347, 303 P.2d 680 (1956).

We hold that the testimony relating to the meaning of the word "wheel" and to the design of the truck in question was properly admitted by the trial court. Here witnesses familiar with motor vehicles testified about "wheels" generally and the design of the truck in question specifically. Milwaukee Mutual did not show how the average person on the street would view the particular truck in question. All Milwaukee Mutual could show was that in everyday parlance people might use the words wheel and tire interchangeably. While a layperson or expert may at times use the terms carelessly, upon reflection he or she will usually agree that the tire is an object separate from the wheel.

The applicable meaning of words in an insurance policy should be determined by the meaning given to them by the informed person. The trial court properly admitted the industry representative's testimony, and we conclude that the court was correct in ruling that the sod truck was a four-wheel vehicle within the terms of the policy.

## II.

Milwaukee Mutual contends that the trial court erroneously interpreted the applicable law in holding that the truck was not "furnished or available" for Stephen Henningfeld's "regular use," as these words are used in the policy definition of "non-owned automobile." The purpose of this policy provision is to provide coverage to the insured while he or she has only infrequent or merely casual use of a vehicle other than one described in the policy, but not to cover the insured (or a member of the insured's household) against personal liability with respect to the use of a vehicle which the insured frequently uses or has the opportunity to do so as that increases the risk to an insurance company without a corresponding increase in premium.[2] The greatly added risk which insurers are unwilling to incur for a single premium is the multiplicity of potential liability situations where a nonowned vehicle is regularly used or available for regular use. Under the terms of the policy in question the insurer had contracted to take on the potential liability of a four-wheel sod truck not regularly used or available for regular use.

The definition of "regular use" has been considered by the courts of numerous jurisdictions.[3] This court has considered the policy language in a number of cases.[4]

[2] *Moutry v. American Mut. Liability Ins. Co.*, 35 Wis. 2d 652, 657, 151 N.W.2d 630 (1967); Annot., *Exclusion from "Drive other cars" provisions of automobile liability insurance policy of other automobile owned, hired or regularly used by insured or member of his household*, 86 A.L.R.2d 937, 940 (1962); 13 *Couch on Insurance*, sec. 45:1052, p. 68 (2d ed. 1965).

[3] *See*, Annot., *Exclusion from "Drive other Cars" provisions of automobile liability insurance policy of other automobile owned, hired or regularly used by insured or member of his household*, 86 A.L.R.2d 937 (1962).

No absolute definition has been or can be established for the term "available or furnished for regular use." This court has said that the interpretation and application of the term "regular use" in the policy depends upon the particular facts and circumstances in each case.

"The meaning of the words 'regular use' in an automobile insurance policy such as is involved here is one that has frequently been before the courts. Obviously, each case which arises under this clause must turn on its own peculiar facts. On each end of the spectrum are the easy cases. If the use of the auto is sporadic and rigidly restricted, there is coverage under the policy. At the other end of the spectrum are thoses cases in which the use is unqualified and continuous; in these cases the denial of coverage is obvious. The doubtful cases are those in the middle." *LeMense v. Thiel, supra,* 25 Wis.2d at 367.

Some of the "signposts" of "regular use" as set out in the cases are continuous use rather than sporadic use; frequent use rather than infrequent or merely casual use; unqualified use rather than restricted use; use for an indefinite period rather than a definite period; usual use rather than unusual use. Regularity of use is not diminished by the fact the vehicle is available for business use and not for personal use. If the employee's driving on the employer's business is a primary duty of the employee, the use is more apt to be considered "regular use."

The frequency of Stephen's use of the truck was disputed. While he moved the trucks about the sod farm

[4] *Jones v. Perkins,* 75 Wis.2d 18, 23, 248 N.W.2d 468 (1977); *Moutry v. American Mut. Liability Ins. Co.,* 35 Wis.2d 652, 151 N.W.2d 630 (1967); *Giese v. Karstedt,* 30 Wis.2d 630, 141 N.W.2d 886 (1966); *LeMense v. Thiel,* 25 Wis.2d 364, 130 N.W.2d 875 (1964).

daily, his over-the-road driving was intermittent. The trial judge's decision noted that some weeks Stephen did not drive at all and that his average deliveries ranged from two times to as much as five times per week. Stephen's use of the truck was restricted and controlled. He was required to have specific permission, in the form of a request to deliver sod and the transfer to him of a delivery ticket, each time he drove the truck off the farm. He had no blanket permission to use the truck at times of his own choosing regardless of his intended purpose. Discretion as to the use of the vehicles resided solely with the San Felippo brothers. His use of the truck was defined in purpose and scope. The San Felippo brothers made 90 percent of the deliveries; Stephen and others made the remaining ten percent. Making deliveries was an adjunct to the primary duties of Stephen's job which included plowing, rototilling, mowing, moving irrigation pipe and other tasks associated with the cultivation rather than the delivery of sod. Stephen delivered only those loads which could not be taken by others whose primary duty was delivery.

This is a close question. However, considering all the facts and circumstances of this case, we hold that the trial court did not err, as an issue of fact or law, in determining that the sod truck was not available or furnished for Stephen's regular use.[5]

---

[5] The interpretation of contractual language may be a question of fact or of law. In *RTE Corp. v. Maryland Casualty Co.*, 74 Wis.2d 614, 621, 247 N.W.2d 171 (1976), this court said:

". . . The construction of a written contract is normally a matter of law for the court, although in a case of ambiguity in a written contract where words or terms are to be construed by extrinsic evidence, then the question is one for the jury. The rule was stated as follows in *Thurston v. Burnett & Beaver Dam Farmers' Mut. Fire Ins. Co.*, 98 Wis. 476, 478, 479, 74 N.W. 131 (1898):

## III.

The last ground for this appeal concerns the trial court's failure to make separately written findings of

" '. . . The case comes clearly within the rule that where language is plain and unambiguous, the apparent import of the words must govern, and the rule that where there is no uncertainty as to the meaning of the words used in the contract, and where such uncertainty exists but there is no extrinsic evidence or circumstance bearing on the subject to be considered in determining the meaning attributed to them by the parties when the contract was made, the proper interpretation of the words and construction of the contract are solely for the court.' "

*See also Breiby v. Department of Administration,* 55 Wis.2d 16, 18, 197 N.W.2d 737 (1972); *Westerman v. Richardson,* 43 Wis.2d 587, 591, 168 N.W.2d 851 (1969); *Rabinovitz v. Travelers Ins. Co.,* 11 Wis.2d 545, 549, 105 N.W.2d 807 (1960); *Bauman v. Midland Union Ins. Co.,* 261 Wis. 449, 451, 53 N.W.2d 529 (1952); *French v. Fidelity & Casualty Co. of N. Y., supra,* 135 Wis. at 269."

If a question of law is involved, due consideration should be given by this court to the trial court's interpretation of a contract, but this court is not bound by such an interpretation. If a question of fact is involved this court will sustain a trial court unless its findings are contrary to the great weight and clear preponderance of the evidence. *Moran v. Shern,* 60 Wis.2d 39, 46, 208 N.W.2d 348 (1973).

This court has found the policy exclusion involved in the case at bar unambiguous. *Jones v. Perkins,* 75 Wis.2d 18, 23, 248 N.W.2d 468 (1977). A construction of an unambiguous contract is a matter of law. *Patti v. Western Machine Co.,* 72 Wis.2d 348, 353, 241 N.W.2d 158 (1976). However, the testimony about Stephen's driving activities is in conflict. Factual disputes, the credibility of witnesses, and the inferences to be drawn from the evidence are resolved by the trier of fact. Milwaukee Mutual's brief contends that the trial court misinterpreted the applicable law and that its findings are against the great weight or clear preponderance of the evidence. The brief labels the question whether the truck was furnished or available for the regular use of Stephen a mixed question of law and fact. *See also General Casualty Co. of Wisconsin v. Hines,* 261 Iowa 738, 156 N.W.2d 118, 122, 123 (1968); 13 *Couch on Insurance,* sec. 45:1054, p. 69 (2d ed. 1965).

fact and conclusions of law in accordance with sec. 270.33, Stats. 1973.[6] This section has been repealed and replaced by sec. 805.17(2), Stats.,[7] but the older law, which was effective at the time of the trial, governs this case.

The purpose of the statute is to protect the rights of the litigants and to facilitate review of the record by an appellate court. This court has stressed the importance of compliance with sec. 270.33. *Estate of Olson,* 271 Wis. 199, 208, 72 N.W.2d 717 (1955) ; *MacPherson v. Strand,* 262 Wis. 360, 365, 55 N.W.2d 354 (1952). However,

---

[6] Sec. 270.33, Stats. 1973:

"Except in actions and proceedings under ch. 299, upon a trial of an issue of fact by the court, its decision shall be given in writing and filed with the clerk within 60 days after submission of the cause, and shall state separately the facts found and the conclusions of law thereon; and judgment shall be entered accordingly."

[7] Sec. 805.17(2), Stats.:

"(2) EFFECT. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the ultimate facts and state separately its conclusions of law thereon. The court shall file its findings and conclusions prior to rendering judgment. In granting or refusing interlocutory injunctions the court shall similarly file its written findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a referee may be adopted in whole or part as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of ultimate fact and conclusions of law appear therein. If the court directs a party to submit proposed findings and conclusions, the party shall serve the proposed findings and conclusions on all other parties not later than the time of submission to the court. The findings and conclusions or memorandum of decision shall be made as soon as practicable and in no event more than 60 days after the cause has been submitted in final form."

this court has held the provisions of sec. 270.33 to be directive only. The failure to state separate findings of fact and conclusions of law is not necessarily reversible error. *Kamuchey v. Trzesniewski*, 8 Wis.2d 94, 101, 98 N.W.2d 403 (1959). Facts which are stated in the trial court's memorandum decision will be accorded the same weight as if contained in formal findings. *See Estate of Olson, supra*, 271 Wis. at 208.[8] Also this court may affirm a judgment if a review of the record demonstrates that the trial court reached a result which the evidence would sustain if there was a specific finding. *State ex rel. Skibinski v. Tadych*, 31 Wis.2d 189, 199, 142 N.W.2d 838 (1966). The trial court set forth the factual and legal grounds for its decision in the memorandum opinion sufficiently clearly and completely to protect Milwaukee Mutual's rights and to facilitate review by this court. That Milwaukee Mutual specifically requested separate findings does not render inadequate those findings contained in the memorandum opinion.

Milwaukee Mutual bolsters its argument on the court's failure to state separate findings of fact and conclusions of law by alleging that the trial court failed (1) to state who had the burden of proof, (2) to determine the credibility of the witnesses, and (3) to control the questioning of witnesses.

The trial court and attorneys recognized that burden of proof encompasses two separate burdens—the burden of going forward with the evidence of the alleged fact and the burden of persuading the trier of fact that the alleged fact is true. McCormick on Evidence, sec. 336, pp. 783, 784 (2d ed. 1972) ; 9 Wigmore on Evidence, secs.

[8] Sec. 805.17(2), Stats., quoted above, specifically provides that ". . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of ultimate fact and conclusions of law appear therein."

2485–2489 (3d ed. 1940). All the witnesses were called by the plaintiffs. Milwaukee Mutual called no witness, relying upon cross-examination to present its case. The burden of persuasion becomes a crucial factor when all the evidence has been introduced and when the time for a decision has arrived. The finder of fact (judge or jury) must then be "instructed" how to decide an issue of fact if his or her mind is in doubt. In such an event, the decision must be against the party having the burden of persuasion. Where, as in this case, the parties dispute who has the burden of persuasion, the judge, in a non-jury trial, should specifically and clearly allocate the burden of persuasion. However, we do not find prejudicial error here. The judge commented that "he was not too concerned with burden of proof here because . . . I think it is primarily a question of law based upon some facts here which don't apparently appear to be in serious dispute. There is some shaded meaning to be given to some of this testimony." An examination of the record reveals that the trial court's statement is a fair evaluation of the evidence. As we discussed above, the record demonstrates there was sufficient evidence to support the findings and the decision. Thus, in this case the court's failure to allocate expressly the burden of persuasion did not prejudice the rights of Milwaukee Mutual at trial or on appeal.

True, the credibility of some witnesses was in issue because of prior inconsistent statements. Those discrepancies were exposed by Milwaukee Mutual's counsel at trial, and they were referred to by the trial court in its memorandum decision. No separate findings as to credibility were needed.

Milwaukee Mutual alleges that although there were five separate sides represented at the trial, four sides

were united against Milwaukee Mutual, and the court failed to rule properly in light of these facts on objections to questioning of witnesses. The court acknowledged the potential commonality of interest among the various plaintiffs and witnesses and the consequent need to control the use of leading questions. This court has often stated the general rule that the "extent of the manner and even the right of multiple cross-examination by different counsel representing the same party can be controlled by the trial court so that the trial proceeds in an orderly and fair manner. The exercise of discretion by the trial court to deny or restrict cross-examination must be dependent upon the circumstances of the trial. This court will not reverse unless it clearly appears that the trial court abused its discretion and that the error affected a substantial right of the complaining party and probably affected the result of the trial." *Neider v. Spoehr,* 41 Wis.2d 610, 618, 165 N.W.2d 171 (1969). *See also Wirsing v. Krzeminski,* 61 Wis.2d 513, 527, 213 N.W.2d 37 (1973) ; *Rodriguez v. Slattery,* 54 Wis.2d 165, 171, 172, 194 N.W.2d 817 (1972). We find no abuse of discretion on this record.

*By the Court.*—Order and judgment affirmed.