139 Cal.App.3d 509 (1983)
188 Cal. Rptr. 722
S & H INSURANCE COMPANY, Plaintiff, Cross-defendant and Appellant,
v.
CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU, Defendant, Cross-complainant and Respondent; MERCURY CASUALTY COMPANY, Cross-complainant and Respondent.
Docket No. 53704.
Court of Appeals of California, First District, Division Three.
January 28, 1983.
*511 COUNSEL
Joseph C. Howard, Jr., and Branson, Fitzgerald & Howard for Plaintiff, Cross-defendant and Appellant.
Frank E. Preston, William A. Robinson and Staiger, Santana, Yank, Molinelli & Preston for Defendant, Cross-complainant and Respondent.
*512 Joseph H. Huber, William H. Gavin III and Gassett, Perry & Frank for Cross-complainant and Respondent.
OPINION
BARRY-DEAL, J.
S & H Insurance Company (S & H) appeals the summary judgments in favor of respondents, California State Automobile Association Inter-Insurance Bureau (CSAA-IIB) and Mercury Casualty Company (Mercury), entered May 1, 1981, and June 4, 1981, respectively.[1] The parties are insurers who each sought judicial declarations exonerating themselves while holding the others liable for property damage caused by a rented Ford van. Appellant S & H, upon whom the trial court summarily fixed liability, argues essentially that the summary judgments are erroneous and the matter should be allowed to proceed to trial. We find no error and affirm the judgments.

STATEMENT OF FACTS
The underlying facts are not disputed. On April 21, 1979, Hengehold Motor Company (Hengehold), to whom S & H had issued a motor vehicle liability insurance policy, rented a 12-foot Ford van to Timothy Anderson, who had an automobile liability insurance policy issued by CSAA-IIB. That same day the latter permitted his brother, Mark Anderson, who had an automobile liability insurance policy issued by Mercury, to operate the van, and while thus used the van came into contact with a carport owned by Del Charo Apartments (Del Charo), causing $550 in damages. Del Charo submitted a claim to Hengehold, who gave it to S & H, who in turn passed it on to CSAA-IIB, pursuant to Insurance Code section 11580.9, subdivision (b). CSAA-IIB refused S & H's tender of the claim on grounds that its policy issued to Timothy Anderson covered the use of nonowned vehicles with four wheels only, whereas the van in question had six.
S & H instituted a declaratory relief action against CSAA-IIB on August 30, 1979, claiming that CSAA-IIB's policy did, in fact, cover the use of the van, and CSAA-IIB was thus primarily liable. CSAA-IIB filed a cross-complaint for declaratory relief on November 27, 1979, naming both S & H and Mercury as cross-defendants. Finally, Mercury filed its own cross-complaint for *513 declaratory relief, naming S & H and CSAA-IIB as cross-defendants and asserting a defense identical to CSAA-IIB's. The judgments appealed from stem from the granting of summary judgment motions brought by Mercury on February 27, 1981, and by CSAA-IIB on March 16, 1981.

THE POLICIES
Part I of the CSAA-IIB policy, entitled "LIABILITY," initially provides that CSAA-IIB is liable to pay "all sums which the insured shall become legally obligated to pay as damages ... because of ... injury to ... property ... arising out of the ... use of ... any non-owned automobile, ..." Under the "DEFINITIONS" subheading to this part, a "`non-owned automobile'" is defined as "an automobile ... not owned by or furnished for the regular use of ... the ... insured ...," and an "`automobile'" in turn is defined as "a four wheel land motor vehicle...."
Part I of the Mercury policy, also entitled "LIABILITY," uses much the same language. Mercury obligates itself to pay "all sums... which the insured shall become legally obligated to pay as damages because of: ... injury to ... property ... arising out of the ... use of ... a non-owned automobile, ..." A "`Non Owned Automobile,'" under the subheading "Definitions," includes, in pertinent part, a "utility automobile" which is not owned by or available for the regular use of the insured, and which is used with the owner's permission. "`Utility Automobile'" is then defined as an "automobile with only four wheels ...," and the more basic term, "`Automobile,'" is defined as "a land motor vehicle with only four wheels. ..." (Original italics.)
The only pertinent distinction between the policies is Mercury's repeated use of the words, "with only four wheels," in bold print, while the "four wheel" language in the CSAA-IIB definition of "`automobile'" is not set off in bold print, nor is it repeated in other applicable definitions.[2]

DISCUSSION
(1) The general test for determining the validity of the summary judgments is whether S & H's opposing affidavit, liberally construed, raises a triable issue of fact, and, furthermore, whether the respondents' affidavits, strictly construed, are sufficient to sustain the judgments. (Corwin v. Los Angeles Newspaper Service Bureau, Inc. (1971) 4 Cal.3d 842, 851-852 [94 Cal. Rptr. 785, 484 P.2d 953].)
*514 (2) S & H argues that several items in its opposing affidavit raise a triable issue of fact as to whether the policy language referred to above covers the use of the subject van, which has two front wheels and four rear wheels. The first of these items is an exhibit which is averred to be an interoffice memorandum circulated by State Farm Insurance Company, referring to its "new `Readable' policy" as one which "broadens" nonowned automobile coverage, effective September 1, 1976, to include a "two axle, six-wheel vehicle that has one set of dual wheels." However, even the most liberal construction of this document cannot reasonably create a triable issue as to the customary interpretation of the policies involved here. This memorandum, drafted by an insurer who is not a party to this action, merely refers to a policy neither itself in issue nor itself submitted in evidence. There is no showing that State Farm Insurance Company's new policy language is anything like that in issue, and, in fact, the memorandum's reference to a "new ... policy" which "broadens" coverage does little but to suggest a specific departure from the evidently standard policy language used by Mercury and CSAA-IIB in this case.
S & H presented another exhibit, a "Blue Book" for use in determining the value of used trucks. This exhibit is likewise ineffectual in raising a triable issue, for it has no conceivable relationship to the policy language involved. Moreover, the significance of the "Blue Book" in this case depends on language stating that "[d]ual wheels are counted as single wheels ...," but this language applies only to its definition of "wheel power" as a factor affecting the value of a used truck. No construction, however liberal, can connect the "Blue Book" definition of "wheel power" with the customary meaning given or intended by parties to insurance contracts like those here in issue.
Next, S & H points to statements in its affidavits which can best be described as offers of proof. In this regard, S & H emphasizes an offer of proof regarding proposed testimony by an industrial engineer to the effect that the dual wheels of the subject van are "bolted together." These offers of proof concern matters not within the personal knowledge of affiant, and, in the absence of any reasons stating why declarations of the proposed witnesses could not themselves have been presented, simply do not constitute evidence which the trial court need consider in ruling on the motions for summary judgment.[3] (Code Civ. Proc., § 437c.)
*515 Finally, S & H refers to a request in its affidavit that judicial notice be taken of Hochgurtel v. San Felippo (1977) 78 Wis.2d 70 [253 N.W.2d 526], and argues as it did below that this and other decisions considering the law of sister states raise a triable issue of fact. This contention has no merit. No doubt a triable issue of fact would have been raised if S & H, as did the insured in Hochgurtel, had submitted evidence in its affidavit concerning the meaning of "wheel," as well as evidence showing that the subject van had only four "wheels," despite the presence of six tires.[4] But, plainly S & H cannot rely on statements of fact or law from cases reported outside this jurisdiction to raise a factual issue, regardless of the value such cases might have in deciding an issue of law. In sum, we find that appellant's affidavit raises no triable issue of fact, and thus turn to the sufficiency of respondents' affidavits.
Respondents' affidavits refer to the policy language quoted above and rely on an admission by S & H that the Ford van in question was a "six-wheeled land motor vehicle." The issue thus framed is simply whether the policies covered the use of such a vehicle, and as there is no triable issue of fact nor any conflicting parol evidence regarding the language, the issue is one of law, properly subject to determination on motion for summary judgment. (Pepper Industries, Inc. v. Home Ins. Co. (1977) 67 Cal. App.3d 1012, 1017-1018 [134 Cal. Rptr. 904].) (3) Such an issue is to be determined independently on appeal. (Id., at p. 1018.)
(4) It is axiomatic that an insurer, to the extent allowed by law and public policy, may, in plain language, effectively limit coverage in the policies that it issues. (Lumberman's Mut. Cas. Co. v. Wyman (1976) 64 Cal. App.3d 252, 259 [134 Cal. Rptr. 318].) This court has previously found that a limitation identical to those in issue here, phrased in clear and understandable language, was both permissible and effective in excluding coverage for the use of a nonowned six-wheel truck. (U-Haul Co. of Southern Cal., Inc. v. State Farm Mut. Auto. Ins. Co. (1975) 50 Cal. App.3d 665, 668-669 [123 Cal. Rptr. 628].)
On this point S & H argues that the CSAA-IIB policy limitation is not effective, because it is not as conspicuous either as Mercury's limitation or as that *516 discussed in U-Haul Co. of Southern Cal., Inc. v. State Farm Mut. Auto. Ins. Co., supra, 50 Cal. App.3d 665.[5] We agree that CSAA-IIB's language is not set off as emphatically as is Mercury's, nor apparently as was State Farm's in U-Haul, but this is not itself dispositive. The language in all other respects is undoubtedly clear and understandable, and each defined term, such as "`automobile,'" is set with bold print in quotation marks, effectively drawing attention to the entire subheading of "DEFINITIONS." In addition, the definitions themselves begin on the first page of the pertinent part of the policy, a position more proximate in relation to the liability section than the designated "EXCLUSIONS" themselves. We find that, in the absence of any evidence to the contrary, the limiting definitions are sufficiently conspicuous and plain to exclude coverage of a nonowned "six-wheeled land motor vehicle."
S & H's final contention is that CSAA-IIB waived its defense for failure to comply with Code of Civil Procedure section 431.50[6] by failing to set forth its specific policy language in its answer to the original complaint. This curious argument is meritless. Code of Civil Procedure section 431.50 has not been previously discussed in any reported decision, but its language is identical to former Code of Civil Procedure section 437a, and the only decisions ever to apply that section found it to be unconstitutional and void. (Coolidge v. Standard Acc. Ins. Co. (1931) 114 Cal. App. 716, 723-724 [300 P. 885]; Board of Education v. Alliance Assur. Co. (C.C.N.D. Cal. 1908) 159 Fed. 994, 998-1000; see Cal. Law Revision Com. com. to Code Civ. Proc., § 431.50, 14A West's Ann. Code Civ. Proc. (1973 ed.) p. 411; Deering's Ann. Code Civ. Proc. (1973 ed.) p. 314.) But aside from its questionable validity, Code of Civil Procedure section 431.50 clearly has no application to the instant actions. (5) Its language is best understood in light of the fact that former Code of Civil Procedure section 437a was passed in 1907, after the earthquake and fire of 1906, and was plainly directed against insurers who sought to avoid liability for loss by fire on grounds that the remote or ultimate cause of the loss was the earthquake, a risk not covered in most such policies. (Board of Education v. Alliance Assur. Co., supra, 159 Fed. 994, 997-998.) In this case there is no such complex chain of causation; the defense is simply that the proximate cause of the loss, i.e., the use of a six-wheel van, was not a "peril insured against," and, as such, Code of Civil Procedure section 431.50 is by its own terms not applicable.
*517 The judgments are affirmed.
Scott, Acting P.J., and Feinberg, J., concurred.
NOTES
[1] The notice of appeal, filed April 20, 1981, is timely with regard to the judgment in Mercury's favor, as the original entry of that judgment was made April 17, 1981. However, it is premature with regard to the judgment in favor of CSAA-IIB, as it was filed both before the rendition and entry of that judgment. Because the notice was filed after the trial court's announcement of its intended ruling at the hearing on April 14, 1981, and CSAA-IIB offers no opposition on this ground, we choose to deem the notice as timely, pursuant to rule 2(c), California Rules of Court.
[2] CSAA-IIB's "four wheel" language is elsewhere repeated only once, in a definition of "`private passenger automobile.'"
[3] S & H, in a related argument, contends that the motions should have been denied to allow further discovery, pursuant to Code of Civil Procedure section 437c, subdivision (g), because its affidavit disclosed the possible existence of "facts essential to justify opposition." However, as previously noted, the affidavit gives no reasons why such facts could not be then presented, as required by the same statutory language. Nor, despite appellant's contention, does the affidavit disclose the possible existence of such facts, as is also required. The statements relied on by S & H, to the effect that CSAA-IIB was deliberately avoiding discovery and that the State Farm memorandum reflected the customary interpretation of language identical to that in issue, appear not in the sworn declaration, but in the accompanying memorandum of law. As such, there was no error in refusing to deny the motions on this basis.
[4] In Hochgurtel v. San Felippo, supra, 78 Wis.2d 70 [253 N.W.2d 526], the Wisconsin Supreme Court, in construing policy language like that in issue, initially noted that the subject vehicle, a sod truck, was covered under the policy if it had four wheels, but not if it had six. (Hochgurtel, supra, 78 Wis.2d at p. 78 [253 N.W.2d at p. 529].) The court rejected the argument that there was no coverage because the subject truck had six "tires," noting that this word, though sometimes used interchangeably with "wheels," was commonly understood to denote a separate object. It also held that expert testimony on the meaning of "wheel" and on the particular design of the truck was properly admitted, upholding the trial court's finding that the sod truck in fact had four "`cast spoke wheels'" (as distinguished from the more common "`disc wheel[s]'"), despite the fact that it had six "tires." (Hochgurtel, supra, 78 Wis.2d at pp. 78-80 [253 N.W.2d at pp. 529-530], original italics.) Thus, while this case upheld the admission of expert testimony, it can hardly be said to supply such evidence for S & H.
[5] S & H thus concedes the effectiveness of the Mercury limitation on this ground.
[6] Code of Civil Procedure section 431.50 states: "[i]n an action to recover upon a contract of insurance wherein the defendant claims exemption from liability upon the ground that, although the proximate cause of the loss was a peril insured against, the loss was remotely caused by or would not have occurred but for a peril excepted in the contract of insurance, the defendant shall in his answer set forth and specify the peril which was the proximate cause of the loss, in what manner the peril excepted contributed to the loss or itself caused the peril insured against, and if he claims that the peril excepted caused the peril insured against, he shall in his answer set forth and specify upon what premises or at what place the peril excepted caused the peril insured against."