Evette WESTPHAL, Hank Westphal, and Tanner Westphal, Plaintiffs-Respondents,

v.

FARMERS INSURANCE EXCHANGE, Defendant-Appellant.†

Court of Appeals

*No. 02–1343. Submitted on briefs December 9, 2002.—Decided July 17, 2003.*

2003 WI App 170

(Also reported in 669 N.W.2d 166.)

† Petition to review denied 10-1-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Susan R. Tyndall* of *CMT Legal Group, Ltd.* of Waukesha.

On behalf of the plaintiffs-respondents Hank and Evette Westphal, the cause was submitted on the brief of *Charles D. Slane* of *Terry & Slane, P.L.L.C.*, of Bloomington, Minnesota, and of counsel and on behalf of plaintiff-respondent Tanner Westphal, the cause was submitted on the brief of *R. Michael Waterman* of *Mudge Porter Lundeen & Sequin, S.C.* of Hudson.

Before Dykman, Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. Farmers Insurance Exchange appeals an order denying its motion for sum-

mary judgment on a coverage defense for an automobile accident involving Eric Meadows and Evette and Tanner Westphal.[1] The circuit court concluded there were issues of material fact as to whether the "drive other cars" exclusion applied and that the "business use" exclusion did not apply. Because we conclude that a dispute of material fact existed concerning: (1) the ownership of the pickup truck that Eric was driving at the time of the accident and (2) whether the pickup was furnished for Eric's regular use, summary judgment was properly denied. Additionally, we conclude that the policy language, "pool of vehicles," relative to the business use exclusion, is ambiguous. Accordingly, as construed against Farmers, it does not lie as a coverage defense, and we affirm the circuit court in this regard as well.

## BACKGROUND[2]

¶ 2. On April 8, 1999, while driving a 1986 Ford pickup, Eric Meadows caused a motor vehicle accident that resulted in serious injuries to Evette Westphal and her son, Tanner Westphal. Eric's mother, Nancy Meadows Bear, carried a Farmers auto insurance policy on one vehicle, a 1992 Dodge Dynasty. As a resident of his

---

[1] The plaintiffs in this action are Evette Westphal, her husband, Hank Westphal, and Evette's son, Tanner Westphal. Although the parties submitted separate briefs, we will refer to them collectively as the Westphals for purposes of this appeal.

[2] Because Farmers appeals an order denying summary judgment, the background facts relative to the circuit court's ruling on summary judgment come from depositions submitted in the summary judgment proceeding. However, because Farmers also appeals the circuit court's determination after trial that the business use exclusion does not apply, facts adduced at trial are also included and are so noted.

mother's household, Eric was an "insured" under the policy, so a request for coverage was made of Farmers. Farmers denied coverage on two grounds: (1) the "drive other cars" exclusion applied because Eric either owned the pickup or it was furnished for his regular use and (2) the business use exclusion applied because the pickup was one of a "fleet or pool of vehicles" provided for Eric's use in the course of his employment.

¶ 3. At the time of the accident, Eric worked for Niceli Engineering as a basic assembler and "gopher," which required that he drive to various locations to pick up parts. Bruce Fall, the owner of Niceli Engineering, commuted to work in his Audi or the Ford pickup truck. He allowed employees to use whichever car he had at work for errands. Employees also used their own cars for errands. Fall estimated that running errands was ten percent of Eric's duties.

¶ 4. On March 31, 1999, Fall agreed to sell Eric the Ford pickup for $1000. He also agreed to have Niceli Engineering advance Eric $1000 that Eric would, in turn, pay to Fall for the purchase of the truck. Niceli would then deduct $50 per month from Eric's paycheck until the $1000 was repaid. Eric testified that he agreed not to operate the truck for personal use until after he made the first payment. Eric understood that the truck was "owned by Bruce Fall until [he] had paid the thousand dollars back" and that Fall would continue to insure the vehicle until he transferred title to Eric after the final payment. Additionally, Eric said that he continued to ask Fall's permission prior to using the truck for either business or personal purposes.

¶ 5. In contrast, Fall testified that on March 31, Niceli's office manager prepared a bill of sale and promissory note and that after Eric signed the papers, Fall "turn[ed] over the truck to [Eric]." According to

Fall, from that point forward, Eric owned the truck and his use was not restricted. He further testified that he intended to transfer title to Eric on March 31 but that he did not have the title in his possession. Fall applied for a new title on April 5, 1999.

¶ 6. Between March 31 and April 8, the truck was available for and used by Niceli employees on business related errands. Eric recalled that he used the truck twice for personal use and that on both occasions he requested Fall's permission prior to taking the truck. The accident destroyed the pickup and Niceli Engineering paid towing and storage costs.

¶ 7. After considering the testimony referenced above, the briefs and oral arguments, the circuit court concluded that disputed material facts existed, and it denied Farmers' motion for summary judgment on its coverage defenses. At trial, the jury determined Eric did not own the pickup at the time of the accident and that the pickup was not then available for Eric's regular use. The parties agreed that after verdict the circuit court would decide the question of whether the business use exclusion applied under the "fleet or pool of vehicles" policy language.

¶ 8. In that regard, the circuit court concluded that the business use exclusion did not apply because the term "pool" was ambiguous and there was evidence in the record supporting a finding that the pickup truck was not one of a fleet or pool of vehicles available for Eric's use. Accordingly, the circuit court concluded the exclusions did not apply and entered judgment against Farmers. Farmers appeals.

## DISCUSSION

### Standard of Review.

¶ 9. We review summary judgment decisions *de novo,* applying the same methodology employed by the circuit court. *Guenther v. City of Onalaska,* 223 Wis. 2d 206, 210, 588 N.W.2d 375, 376 (Ct. App. 1998). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. *Smith v. Dodgeville Mut. Ins. Co.,* 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* at 232–33, 568 N.W.2d at 34. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute that entitle the opposing party to a trial. *Id.* "[I]f a genuine dispute of material fact exists or if the evidence presented is subject to conflicting inferences or factual interpretations, summary judgment must be denied." *Hanson v. Prudential Prop. & Cas. Ins. Co.,* 224 Wis. 2d 356, 362, 591 N.W.2d 619, 623 (Ct. App. 1999).

¶ 10. The resolution of this case also requires interpretation of policy exclusions to determine whether coverage exists. The construction and interpretation of a written insurance policy is a question of law that we review *de novo. Guenther,* 223 Wis. 2d at 210, 588 N.W.2d at 377.

**Drive Other Cars Exclusion.**

■

¶ 11. Farmers argues that coverage for the accident is barred by the drive other cars exclusion, and the circuit court therefore erred in failing to grant summary judgment to it. The policy exclusion states in relevant part:

> This coverage does not apply to:
>
> 10. **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle other than **your insured car**, which is owned by or furnished or available for regular use by you or a **family member.**

Wisconsin courts have long recognized that the purpose of the drive other cars exclusion is to provide coverage to the insured when he or she has infrequent or casual use of a vehicle other than the one described in the policy, but to exclude coverage of a vehicle that the insured owns or frequently uses for which no premium has been paid. *Hochgurtel v. San Felippo*, 78 Wis. 2d 70, 81, 253 N.W.2d 526, 530 (1977); *Peabody v. American Family Mut. Ins. Co.*, 220 Wis. 2d 340, 352, 582 N.W.2d 753, 757–58 (Ct. App. 1998). Farmers argues that this exclusion applies because on the date of the accident: (1) Eric owned the pickup, or alternatively, (2) the pickup was available for his regular use. We consider Farmers' arguments in turn.

### 1. Ownership.

¶ 12. The parties agree that the policy does not cover Eric for liability based on the use of an owned vehicle. Farmers asserts that the parties' conduct demonstrates that Eric owned the truck on the day of the

577

accident. In support of its position, Farmers cites *Continental Casualty Co. v. Transport Indemnity Co.*, 16 Wis. 2d 189, 114 N.W.2d 137 (1962) and *Loewenhagen v. Integrity Mutual Insurance Co.*, 164 Wis. 2d 82, 473 N.W.2d 574 (Ct. App. 1991). In *Continental Casualty*, the supreme court construed the term "owner," stating:

> The term 'owner' is of quite general application and is frequently applied to one having an interest in or claim upon property *less than* absolute and unqualified title.

*Continental Cas.*, 16 Wis. 2d at 193, 114 N.W.2d at 139 (emphasis added). The court held that where a truck lease provided that the lessee would have exclusive possession, control and use of the leased equipment, the lessee was the "owner." However, the supreme court in *Continental Casualty* also concluded that the term "owner" had no fixed meaning and it must be interpreted based on the circumstances presented. *Id.*

¶ 13. In *Loewenhagen*, we restated the settled principal that "where title 'has been endorsed and delivered, a conclusive presumption arises . . . that ownership was transferred; where it has not been endorsed and delivered, the intent and conduct of the parties govern.' " *Loewenhagen*, 164 Wis. 2d at 87, 473 N.W.2d at 575 (citation omitted). Here, paper title had not been delivered and the intent is disputed. Therefore, we conclude that neither *Continental Casualty* nor *Loewenhagen* are dispositive of the ownership issue, as both cases can be read to support either position on the facts before us.

¶ 14. We note that while motor vehicle title is *prima facie* evidence of ownership and supports a finding that Fall owned the vehicle, *see* Wis. Stat.

§ 342.10(5) (2001–02);[3] *Duncan v. Ehrhard*, 158 Wis. 2d 252, 260, 461 N.W.2d 822, 825–26 (Ct. App. 1990), this finding is not inevitable. Fall testified that Eric paid him in full for the truck; that he intended to transfer title on March 31, but could not find the title; that Eric had control of the vehicle; and that his use of the pickup was not restricted. This may support a finding that Eric owned the truck. *See Continental Casualty*, 16 Wis. 2d at 193, 114 N.W.2d at 139. By contrast, the Westphals point out that Eric testified that: (1) Fall owned the truck until Eric satisfied the $1000 loan; (2) Fall maintained insurance on the vehicle; (3) Fall continued to restrict Eric's use of the truck after March 31; and (4) Fall allowed other Niceli employees to use the truck for work related errands until the day of the accident. In short, the reasonable inferences drawn from these facts permit competing findings, a question properly sent to the jury to resolve.

### 2. Regular Use.

¶ 15. Farmers contends that even if we assume *arguendo* that Fall owned the truck, the policy does not cover a vehicle "furnished for regular use." Farmers asserts that Eric's "unfettered" access to the truck prior to the accident demonstrates unequivocally that the pickup was furnished for his regular use. The Westphals respond that Eric's "definitely restricted" use of the truck did not constitute "regular use" necessary to trigger the exclusion.

■

¶ 16. The definition of "regular use" has been considered by the Wisconsin courts in a number of cases

---

[3] All further references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

and "[n]o absolute definition has been or can be established." *Hochgurtel*, 78 Wis. 2d at 82, 253 N.W.2d at 531. Rather, the interpretation and application of the regular use provision depends on the particular facts and circumstances of each case. *See Le Mense v. Thiel*, 25 Wis. 2d 364, 367, 130 N.W.2d 875, 876 (1964). Some of the indicia of regular use are: (1) continuous use rather than sporadic use; (2) frequent use rather than infrequent or merely casual use; (3) unqualified use rather than restricted use; (4) use for an indefinite period rather than for a definite period; and (5) usual use rather than unusual use. *Hochgurtel*, 78 Wis. 2d at 82, 253 N.W.2d at 531.

¶ 17. The Westphals relate the facts here to those presented in *Hochgurtel*. In *Hochgurtel*, an employee drove a pickup truck owned by his employer to make a business related delivery and was involved in an accident. The supreme court held that the truck was not "furnished for [the insured's] regular use." *Id.* at 83, 253 N.W.2d at 531. The court reasoned as follows:

> Stephen's use of the truck was restricted and controlled. He was required to have specific permission . . . . He had no blanket permission to use the truck at times of his own choosing regardless of his intended purpose . . . . Making deliveries was an adjunct to the primary duties of Stephen's job.

*Id.* at 82–83, 253 N.W.2d at 531. The Westphals contend that similar to *Hochgurtel*, Eric's use of the truck was primarily restricted and controlled by his employer. They allege that he was required to have specific permission to use the truck. Additionally, Eric's use of the truck was adjunct to his normal employee duties; Fall estimated that only ten percent of Eric's duties was running business related errands. Finally, the Westphals allege that Fall continued to restrict access to the

pickup truck to the date of the accident and point out that after March 31, Eric used the pickup for personal purposes on two occasions but only "with the permission of Bruce."

¶ 18. We agree that *Hochgurtel* is factually similar to this case and may support a conclusion that the pickup truck was not "furnished for [Eric's] regular use." However, the *Hochgurtel* court's analysis was shaped by the undisputed presence or absence of the various facts. In contrast, here, many of the underlying facts that often drive a court's determination of whether a vehicle was "furnished for regular use" remained in dispute. *Cf. Jones v. Perkins*, 75 Wis. 2d 18, 248 N.W.2d 468 (1977). In short, a genuine issue of material fact existed. Therefore, whether the vehicle was furnished for regular use was again a matter to be resolved by the jury. Accordingly, we affirm the circuit court's order denying summary judgment.

**Business Use Exclusion.**

¶ 19. Farmers next contends that the business use exclusion applies because the pickup truck was one of a "pool of vehicles" made available for Eric's use in the course of his employment. The policy exclusion states in relevant part:

**Exclusions**

This coverage does not apply to:

. . . .

**Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle by any person employed or otherwise engaged in a business . . . .

581

. . . .

This exclusion does not apply to the maintenance or use of a:

a. **Private passenger car.**

. . . .

However, this exclusion does apply to any vehicle:

. . . .

3. Which is one of a fleet or pool of vehicles which are provided for the use of an **insured person** in the course of his or her employment, unless such vehicle is specifically listed in the Declarations.

¶ 20. The parties agree that at the time of the accident, Eric was driving to St. Paul, Minnesota, to pick up parts for Niceli Engineering. Additionally, Farmers does not dispute that the pickup is a "private passenger car," as defined under the policy. Rather, Farmers contends that the exclusion applies because the truck is one of a "pool of vehicles" provided for Eric's use in the course of his employment.[4] The Westphals contend that the Audi and the pickup are simply two private passenger cars owned by Fall.

¶ 21. The interpretation of an insurance policy is governed by rules of construction similar to those that apply to contracts. *Peace ex rel. Lerner v. Northwestern Nat'l Ins. Co.*, 228 Wis. 2d 106, 120, 596 N.W.2d 429, 435

---

[4] Farmers concedes that the term "fleet" connotes a large number of vehicles and because there are only two vehicles potentially at issue here, the truck and the Audi, its argument therefore focuses solely on the term "pool." We tailor our discussion accordingly.

(1999). If words or phrases in a policy are susceptible to more than one reasonable construction when read in context, they are ambiguous, *Smith v. Atlantic Mutual Insurance Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598–99 (1990), and we will construe the policy as it would be interpreted by a reasonable insured. *Holsum Foods v. Home Ins. Co.*, 162 Wis. 2d 563, 568–69, 469 N.W.2d 918, 920 (Ct. App. 1991). Ambiguities in terms affording coverage are to be resolved in favor of coverage; ambiguities in exclusion clauses are construed narrowly, against the insurer. *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 230, 564 N.W.2d 728, 731 (1997).

> The principle underlying the doctrine is straightforward. As the drafter of the insurance policy, an insurer has the opportunity to employ expressive exactitude in order to avoid a misunderstanding of the policy's terms. Because the insurer is the party best situated to eliminate ambiguity in the policy, the policy's terms should be interpreted as they would be understood from the perspective of a reasonable person in the position of the insured.

*Id.*

¶ 22. Farmers argues there is only one reasonable interpretation of the term "pool," and that is as found in a dictionary. We agree that because the policy does not define the term "pool," we may look to a dictionary definition for the common meaning and usage of words. *See Holsum Foods*, 162 Wis. 2d at 569, 469 N.W.2d at 921. Farmers defines "pool" as "a facility or service shared by a group of people: [*e.g.,*] a car pool; a typing

pool."[5] Additionally, Farmers cites various statutes that have defined the term "pool" as "two items." *See* Wis. Stat. § 340.01(6r) (defining "Car pool vehicle" as those "transporting 2 or more persons"); Wis. Stat. § 289.41(9)(a) (indicating "risk pool" of public utilities requires minimum of two public utilities). Accordingly, Farmers contends that a "pool of vehicles," under the policy, is any two vehicles used by employees in the course of their employment. Because Niceli employees used both the Audi and the pickup to run company errands, Farmers contends the two vehicles formed the "Niceli 'pool' of vehicles."

¶ 23. The Westphals, by contrast, argue the phrase is ambiguous because the disputed language is susceptible to more than one reasonable interpretation. They point out that when read in context, it is reasonable to interpret "pool of vehicles" as covering two or more vehicles set aside or reserved specifically for servicing the business. In support of its argument, the Westphals cite the dictionary definition of "pool" that provides: "a combination of resources, funds, etc., for common advantage." *See also* WEBSTERS THIRD NEW INTERNATIONAL DICTIONARY 1764 (1993). Therefore, they argue that a "pool" is two or more vehicles grouped for a common gain. Because the policy exclusion states that the "pool of vehicles" is provided for the use of a person in the course of his or her employment, a reasonable insured would understand the terms as covering two or more vehicles grouped specifically for servicing the business.

---

[5] Farmers cites multiple variations of the definition for "pool," using the Random House Webster's College Dictionary (1995), but centers its argument on the quoted language.

¶ 24. Our first task is to determine whether the term, "pool of vehicles," is ambiguous. *See Donaldson,* 211 Wis. 2d at 230–31, 564 N.W.2d at 731. We agree that there exists a numeric quality to "pool of vehicles." We need not decide a precise number but conclude that under this policy, a "pool of vehicles" requires a minimum of two vehicles. The question therefore is whether a reasonable insured would understand that *any* two vehicles used by employees to run business related errands constitutes a "pool of vehicles." We emphasize the word *any* because under Farmers' construction any two private passenger cars driven to work, offered to employees to run work related errands, constitute a "pool of vehicles" under the policy.

■

¶ 25. We note that if Farmers wanted to exclude coverage for any private passenger car provided to an employee in the course of employment, the policy could have so provided, but it does not. Additionally, when we consider a potential ambiguity in exclusionary language we must read the terms in context. *Id.* at 231, 564 N.W.2d at 731. The term, "pool," is located within the business use exclusion, an exclusion that generally does not apply to private passenger cars used in relationship to a business. Therefore, we conclude that a reasonable insured could read the exclusion to apply only to those vehicles dedicated to servicing a business. *See e.g., Galvin v. Amica Mut. Ins. Co.,* 417 N.E.2d 34, 36–37 (Mass. Ct. App. 1981) (referring to several cruisers available to police officers as "pool vehicles"). Stated as alternatives, the exclusion could be interpreted to apply when: (1) the vehicle is one of any two or more vehicles that employees use to run work related errands or (2) the vehicle is one of two or more vehicles reserved

specifically for servicing the business. Either interpretation is reasonable; therefore, we conclude that the exclusion is ambiguous. *See Tempelis v. Aetna Cas. & Sur. Co.*, 169 Wis. 2d 1, 10, 485 N.W.2d 217, 220 (1992).

¶ 26. Ambiguities in policy terms are construed against the insurance company that drafted the policy. *Duncan*, 158 Wis. 2d at 261, 461 N.W.2d at 826. Accordingly, we construe the term, "pool of vehicles," to apply only to those vehicles that are reserved specifically for servicing a business. Because the evidence demonstrates that the Audi was Fall's personal car that he used to commute to work and on occasion allowed employees to use for work related errands, we conclude that, at a minimum, the Audi was not reserved specifically for servicing the business. We need not decide whether the pickup truck was reserved for servicing the business because a pool requires a minimum of two vehicles that, without the Audi, is absent from the facts presented. Therefore, we conclude that the business use exclusion does not apply, and we affirm the circuit court's decision is this regard as well.

## CONCLUSION

¶ 27. Because we conclude that a dispute of material fact existed concerning: (1) the ownership of the pickup truck that Eric was driving at the time of the accident and (2) whether the pickup was furnished for Eric's regular use, summary judgment was properly denied. Additionally, we conclude that the policy language, "pool of vehicles," relative to the business use exclusion, is ambiguous. Accordingly, as construed against Farmers, it does not lie as a coverage defense, and we affirm the circuit court.

*By the Court.*—Judgment and order affirmed.