**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 9, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP62**

Cir. Ct. No. 2020CV141

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

JAMES BRUDOS AND CARRIE BRUDOS,

    PLAINTIFFS-APPELLANTS,

CENTERS FOR MEDICARE & MEDICAID RECOVERY SERVICES,

    INVOLUNTARY PLAINTIFF,

  V.

WISCONSIN MUTUAL INSURANCE COMPANY,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Sauk County: PATRICIA A. BARRETT, Judge. *Reversed and cause remanded for further proceedings*.

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This case involves a single automobile liability policy issued by Wisconsin Mutual Insurance Company to Susan Noble and a dispute over the meaning of a "drive other cars" exclusion in the policy, under which coverage is excluded for vehicles not listed in the policy that are "available for" "the regular use of a relative" of the insured.[1] James and Carrie Brudos appeal a circuit court order granting Wisconsin Mutual's motion for declaratory and summary judgment, based on the court's conclusion that the policy does not provide coverage to Susan's son, Tyler Noble. James Brudos and Tyler were operating separate motor vehicles that collided. Brudos alleged that Tyler caused the accident through negligent driving and that the policy provides coverage to Tyler.[2] At the time of the accident, Tyler was driving a 1970 pickup truck that belonged to his father, Charles Johnson. The truck was not a listed vehicle in the Wisconsin Mutual policy issued to Susan. The court granted Wisconsin Mutual's motion for summary judgment based on its application of the "drive other cars" exclusion.

---

[1] As quoted *infra* at ¶13 and as we discuss at various other points below, there are actually two exclusions in the policy that address coverage for vehicles not listed in the policy that are "available for" "the regular use" of a "relative" of the insured. However, the parties for the most part do not differentiate between the two exclusions or explain why they should be considered identical in meaning, which as we note below produces ambiguity on the second issue in this appeal. In any case, because differences between the two exclusions largely do not matter for the particular arguments made by the parties, for ease of reference we often refer generically to "the exclusion" in discussing the shared concepts in both exclusions.

[2] For ease of reference, when discussing the Brudoses as a collective party to this lawsuit we use the term "Brudos."

¶2      The parties disagree about whether, at the time of the accident, the availability of his father's truck for Tyler's use met the standards for applying the "drive other cars" exclusion based on availability for "regular use" under Wisconsin law.  We conclude that there are genuine issues of fact as to whether the truck's availability to Tyler constituted availability for his "regular use" and that, accordingly, summary judgment on that issue is inappropriate.  Brudos also argues, apparently in the alternative, that the exclusion cannot apply under the omnibus statute, WIS. STAT. § 632.32 (2019-20).[3]  The alternative argument is that this application of the exclusion would bar Tyler from coverage on the basis of his blood relation to the insured, his mother, in a manner that would not be incidental to the "main purpose" of the exclusion.  *See* § 632.32(5)(e), (6)(b).  We reject this argument as undeveloped.  Based on our conclusion on the first issue, we reverse and remand for further proceedings consistent with this opinion.

### BACKGROUND

¶3      In July 2017, a 1970 Chevrolet C-10 pickup operated by Tyler Noble collided with a motorcycle operated by James Brudos.  The collision resulted in serious injuries to Brudos.

¶4      Tyler's father, Johnson, owned the vintage Chevy truck.  Johnson is blind.  He generally received help from others in maintaining the truck and had others drive it places.  With this help, he had his truck shown at vehicle

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

exhibitions. A friend of Johnson's, "Tim,"[4] provided "90 percent" of the driving and did "90 percent of all work on" the truck. But Johnson's brother and Tyler also assisted Johnson with preparing the truck for, and transporting it to, exhibitions. As discussed in more detail below, the evidence in the summary judgment materials establishes that Johnson permitted Tyler to drive the truck on some occasions, although at least typically this was for limited purposes.

¶5      At the time of the accident, Tyler resided with his mother, Susan Noble. Wisconsin Mutual issued a policy to Susan as the named insured that provides automobile liability coverage. Johnson's truck was not among the vehicles listed as insured vehicles in the policy.[5]

¶6      Brudos commenced this action, alleging in part that Tyler Noble negligently operated the truck and that his negligence caused the collision injuring Brudos. The complaint further alleged that Wisconsin Mutual's policy issued to Susan Noble provides coverage to Tyler for his negligence.

¶7      Wisconsin Mutual moved for a declaration that its policy does not provide coverage to Tyler and as a result it was entitled to summary judgment in its favor. Specifically, Wisconsin Mutual pointed to two policy provisions excluding coverage for bodily injury arising out of the "use of any vehicle, other than [Susan's] insured car, which is … available for the regular use of a relative."

_____

[4] The parties do not identify, and we do not find in the summary judgment materials, any indication that Johnson's friend, Tim, directly provided evidence or that he is identified in the materials by his full name.

[5] Johnson insured the truck through a State Farm policy, but nothing about that policy or State Farm's actions relative to the accident here is pertinent to any issue that we resolve in this appeal.

Wisconsin Mutual argued that there was no genuine dispute that the availability of the truck to Tyler constituted availability for his regular use. Brudos argued that the undisputed evidence showed that the truck was not available for Tyler's regular use.

¶8 Brudos further argued that summary judgment in Wisconsin Mutual's favor was inappropriate for another reason, namely, that "the exclusion at issue cannot be enforced" under the omnibus statute, WIS. STAT. § 632.32. Pertinent here, the omnibus statute prohibits auto liability policies from "exclud[ing] from coverage afforded" "[p]ersons related by blood" to the insured. *See* § 632.32(6)(b)1. On this point, Wisconsin Mutual argued that another subpart of the statute, para. (5)(e), applies to validate the exclusion, despite the general rule in subdiv. (6)(b)1., because any exclusion from coverage based on Tyler's blood relation to Susan would be merely "incidental[]" to the "main purpose" of the exclusion. *See* § 632.32(5)(e) (policy exclusions "are effective even if incidentally to their main purpose they exclude persons, uses or coverages that could not be directly excluded under sub. (6)(b)."). The purpose of the exclusion is to prevent "piggybacking" liability coverage for Tyler onto his mother's policy based on Tyler's regular use of a vehicle that his mother did not own.[6]

¶9 The circuit court granted Wisconsin Mutual's motion for declaratory and summary judgments in the order that Brudos now appeals.

---

[6] Under WIS. STAT. § 632.32(5)(e),

> A policy may provide for exclusions not prohibited by sub. (6) or other applicable law. Such exclusions are effective even if incidentally to their main purpose they exclude persons, uses or coverages that could not be directly excluded under sub. (6)(b).

5

**DISCUSSION**

¶10    "The grant or denial of a declaratory judgment is addressed to the circuit court's discretion." *Olson v. Farrar*, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1. "However, when the exercise of such discretion turns upon a question of law, we review the question independently of the circuit court's determination." *Id.* This includes the circuit court's challenged decision here to grant declaratory judgment because that decision turned on the court's interpretation of an insurance policy, which presents an issue of law. *See id.*

¶11    We also review whether summary judgment was properly granted as an issue of law. *See id.*, ¶23. "'[I]f a genuine dispute of material fact exists or if the evidence presented is subject to conflicting inferences or factual interpretations, summary judgment must be denied.'" *Westphal v. Farmers Ins. Exch.*, 2003 WI App 170, ¶9, 266 Wis. 2d 569, 669 N.W.2d 166 (quoted source omitted, alteration in *Westphal*); *see also* WIS. STAT. § 802.08(2).

¶12    The parties do not dispute that the policy provides an initial grant of coverage to Tyler for bodily injuries arising out of his allegedly negligent operation of the truck at the time of the accident with Brudos.[7] This leaves the issue of whether the exclusion relied on by Wisconsin Mutual, to which we next turn, excludes from coverage Tyler's allegedly negligent operation of the truck. The burden is on the insurer to prove that an exclusion applies to exclude the

---

[7] The policy provides in pertinent part that it will "pay damages … for which any insured person is legally liable because of bodily injury and property damage arising out of the … use of a car." The policy defines "insured person" to include the policyholder (Susan) and her "relative[s]," and "relative" is further defined to include blood relations living in the same household, which indisputably applies to Tyler.

initial grant of coverage. *See Day v. Allstate Indem. Co.*, 2011 WI 24, ¶26, 332 Wis. 2d 571, 798 N.W.2d 199.

¶13 As is relevant to both issues, the two exclusions relied on by Wisconsin Mutual state that coverage "does not apply to":

> (10) Bodily injury or property damage arising out of the ownership, maintenance of or use of any vehicle, other than your insured car, which is owned by or furnished by or available for regular use by you or a relative.

> (11) Bodily injury or property damage arising out of the ownership of, maintenance of or use of any vehicle, other than your insured car, which is owned by or furnished by or available for the regular use of any relative. This exclusion does not apply to you when operating that vehicle.

(Bolding omitted.) Under both exclusions, Johnson's truck was a "vehicle, other than" an "insured car." As noted, Tyler was a "relative" of the insured Susan. It is undisputed, however, that Johnson was not her "relative" because Johnson did not live in her household. Thus, pertinent to the first issue, the application of both exclusions turns on whether the truck was available to Tyler for his regular use. The parties treat the two exclusions as being interchangeable for the purposes of the first issue, and we follow that approach on the first issue. *See* note 1 *supra*. However, as we note below with respect to the second potential issue relating to WIS. STAT. § 632.32, Brudos's failure to address one set of differences between the exclusions is significant to our conclusion that his argument is undeveloped.

### I. Drive Other Cars Exclusion

¶14 Brudos argues that Tyler Noble's use of the truck as of the time of the accident "did not meet the standards for application" of the "drive other cars" exclusion in the Wisconsin Mutual policy, based on Tyler's alleged regular use of

the truck. *See Westphal*, 266 Wis. 2d 569, ¶11 (referring to exclusion based on "availab[ility] for regular use by … a family member" as a "drive other cars" exclusion (bolding omitted)). At times Brudos frames this argument as one in support of summary judgment in his favor. However, at other times he suggests that remand for determination by the trier of fact is appropriate. Wisconsin Mutual argues that the evidence in the summary judgment materials establishes that the truck was available to Tyler for regular use as a matter of law. We begin by addressing the pertinent standards regarding the concept of "regular use" in Wisconsin law, provide additional background regarding the truck's availability to Tyler, and then explain our conclusion that there are genuine issues of fact as to whether the truck's availability to Tyler constituted availability for regular use and, accordingly, that summary judgment based on that issue in favor of either party is inappropriate.

### A. Legal Standards For Determining "Regular Use" In "Drive Other Cars" Exclusion

¶15    In the context of interpreting and applying an exclusion identical to one of the exclusions at issue here, we noted a series of "indicia of," or factors bearing on the determination of, "regular use" as that phrase is used in a "drive other cars" exclusion.

> The definition of "regular use" has been considered by the Wisconsin courts in a number of cases and "[n]o absolute definition has been or can be established." *Hochgurtel* [*v. San Felippo*], 78 Wis. 2d [70, 82, 253 N.W.2d 526]. Rather, the interpretation and application of the regular use provision depends on the particular facts and circumstances of each case. *See Le Mense v. Thiel*, 25 Wis. 2d 364, 367, 130 N.W.2d 875[] (1964). Some of the indicia of regular use are: (1) continuous use rather than sporadic use; (2) frequent use rather than infrequent or merely casual use; (3) unqualified use rather than restricted use; (4) use for an indefinite period rather than for a

> definite period; and (5) usual use rather than unusual use. *Hochgurtel*, 78 Wis. 2d at 82[].

*Westphal*, 266 Wis. 2d 569, ¶16 (first alteration in original); *see also* ***Jackelen v. Russell***, 2015 WI App 93, ¶23, 366 Wis. 2d 255, 873 N.W.2d 265.  In applying these factors, the regularity of a person's "[a]ctual use of a vehicle is an important consideration," but the availability or opportunity for additional use must also be considered when, as here, the relevant policy language calls for it.  *See **Jackelen***, 366 Wis. 2d 255, ¶26 (discussing ***Hochgurtel***, 78 Wis. 2d at 81, and analyzing a "drive other car" exclusion based on vehicles that were "available or furnished for … regular use" (emphasis omitted)).

¶16     We have explained that

> the purpose of the drive other cars exclusion is to provide coverage to the insured [or another covered person, such as a relative living in the insured's household] when he or she has infrequent or casual use of a vehicle other than the one described in the policy, but to exclude coverage of a vehicle that the insured owns or frequently uses for which no premium has been paid.

*Westphal*, 266 Wis. 2d 569, ¶¶2, 11 (citing ***Hochgurtel***, 78 Wis. 2d at 81) (applying exclusion based on "availab[ility] for regular use … by a family member" to policyholder's son who was member of policyholder's household and therefore an "insured" as defined by the policy).  "'The greatly added risk which insurers are unwilling to incur for a single premium is the multiplicity of potential liability situations where a non-owned vehicle is regularly used or available for regular use.'"  *Jackelen*, 366 Wis. 2d 255, ¶26 (emphasis omitted) (quoting *Hochgurtel*, 78 Wis. 2d at 81).

¶17     The issue of when a genuine issue of material fact exists on the regular use topic is a matter to be resolved by a trier of fact.  *See **Westphal***, 266

Wis. 2d 569, ¶18 (concluding that the "underlying facts that often drive a court's determination of whether a vehicle was 'furnished for regular use' remained in dispute" in that case meaning that a "genuine issue of material fact existed"). Although the interpretation of an unambiguous policy provision is an issue of law, "[f]actual disputes, the credibility of witnesses, *and the inferences to be drawn from the evidence* are resolved by the trier of fact." *Hochgurtel*, 78 Wis. 2d at 83 n.5 (emphasis added); *see also Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶3, 305 Wis. 2d 538, 742 N.W.2d 294 (when undisputed facts lead to more than one reasonable inference about a material fact, summary judgment is not proper).

### B. Additional Background

¶18    The following is additional background summarizing Charles Johnson and Tyler Noble's recorded statements to an adjuster for Wisconsin Mutual.[8]  Johnson stated in part the following.  He owned and maintained the truck largely to show it at exhibitions.[9]  As noted above, Johnson's friend, Tim, did 90% "of all the work on" the truck and 90% of its operation on roadways.  Tim was the only person who drove the truck who was listed on the auto liability policy issued to Johnson.  Johnson's brother also sometimes drove the truck to

---

[8] The statements were submitted to the circuit court as attachments to affidavits in the form of recordings and corresponding transcripts.  Following the lead of the parties and the circuit court, we treat these statements as part of the summary judgment materials before the circuit court. *See* WIS. STAT. § 802.08(2)-(3).

[9] Johnson stated that he continued to own vehicles after he became blind so that he would have a way for someone to drive him to medical appointments, but he did not clarify whether the pickup truck at issue here, as opposed to some other vehicle, was in fact used for this purpose.  Johnson also stated that Tim "normally helps" drive Johnson to appointments.

exhibitions (although Johnson was not clear in his statement in explaining how often his brother did this).

¶19    Continuing with Johnson's statement, Tyler "usually d[id] like to be involved with" getting the truck ready for exhibitions "[w]hen [Tyler] was around." Tyler did not possess his own set of keys to the truck, and he required Johnson's permission to drive the truck, though Johnson never denied Tyler's request to use any of Johnson's vehicles. Tyler's use of the truck was limited to "specific reason[s]" and Johnson did not allow Tyler to drive after dark or do any "joyridin[g]."[10] Tyler drove the truck "once a month maybe." On the day of the accident, Tyler took it out to be washed in preparation for an exhibition.

¶20    Tyler's statement included the following. Tyler did not own a personal vehicle and he did not drive "very often." He would rely on his "friends [to] come pick [him] up." However, before the summer of the accident, Tyler would use a different truck owned by Johnson to drive to school. At least sometimes Tyler used one of his mother's vehicles to get to school, although not "very often." Tyler drove the truck only when Tim was unavailable, which was "not often." Tyler could use the truck only when he had Johnson's permission. Tyler never took the truck without getting permission from Johnson first. Over the

---

[10] Johnson stated in part:

> [Tyler]'s got to be home before dark. He couldn't be just joyridin[g]. He has to have a specific reason why he took [the truck].… It's just like [inaudible] drive around, no, that didn't happen. [Because] the truck's 50 years old, you know, it's not like your daily new one …, it's a classic truck. You know, I didn't want it out.

(Inserted "[inaudible]" in original transcript.)

course of the approximately two years in which Tyler had a driver's license before the accident, Tyler drove the truck a total of approximately 20 times.

¶21     Continuing with Tyler's statement, on the day of the accident, his mother dropped him off at Johnson's house. Johnson directed Tyler to have the truck washed and detailed in preparation for an exhibition. Tyler first picked up a friend of his, and the two of them took the truck to a place where they could swim. At some point, Tyler called Johnson to let him know that Tyler was taking the truck on the swimming outing before getting it washed and detailed. After the swimming outing, Tyler and his friend took the truck to get washed and detailed. The accident occurred when Tyler was driving the truck from the carwash toward his own residence.

### C. Analysis

¶22     We conclude that a reasonable factfinder could find that the evidence in the summary judgment materials and all reasonable inferences arising from the evidence could support either result with respect to "availability for regular use" based on the "signposts" (or factors) identified in *Hochgurtel*. Some of the potentially relevant, undisputed facts point to one outcome or the other on the "regular use" issue under the multi-factor test. But some of these facts point in opposite directions, in a manner that calls for an ultimate weighing of significance by a factfinder. Further, we conclude that much of the evidence on which each side purports to rely for summary judgment in its favor is in fact ambiguous. The result is that the multiple reasonable interpretations and inferences available from the evidence—most notably Tyler and Johnson's statements—distinguish this case from the situation in which "the material facts are not in dispute" rendering whether there was regular use "proper for determination on a motion for summary

judgment." *See Jones v. Perkins*, 75 Wis. 2d 18, 23, 248 N.W.2d 468 (1977) (affirming summary judgment that an exclusion based on "furnishing for regular use" applied to exclude coverage). Therefore, summary judgment in favor of either party on the basis of the "drive other cars" exclusions is inappropriate.

¶23 Beginning with whether Tyler's use was "continuous" or "sporadic," we assume without deciding for purposes of resolving this issue that a reasonable jury would have no basis to discredit Tyler's estimate that he used the truck approximately 20 times over approximately two years.[11] In addition, Johnson estimated that Tyler drove the truck once a month, which at least roughly aligns with Tyler's estimate. This evidence in itself could tend to support a finding of a recurring pattern of use. At the same time, however, there appears to be no firm evidence as to how the alleged 20 incidents of driving were distributed on a timeline, or whether once a month was merely a rough approximation for Tyler's use. For example, neither party identifies evidence as to how consistently the exhibitions or exhibition preparation took place (for example, during the inclement winter months) or how consistently Tim was available to help instead of Tyler. Thus, it is not evident where a factfinder might land in assessing whether Tyler's

---

[11] In applying this factor to the facts of this case below, we understand "continuous" to be a reference to the existence or absence of steady recurrence of use, creating a discernable pattern of use, as opposed to how specifically interrupted or uninterrupted use was. This is because "continuous" is contrasted with "sporadic," and because frequency and the definiteness of the period of the vehicle's use are treated as separate factors.

Because we consider the sporadic-versus-consistent factor inconclusive when applied to the summary judgment materials here, it does not avail Wisconsin Mutual to note that a treatise on insurance law speaks in terms of "a consistent pattern of use or availability." *See* STEVEN PLITT, ET AL., 8A COUCH ON INSURANCE § 121:72 (3d ed. June 2021) ("If application of a regular use exclusion of insurance coverage is between the poles of incidental and habitual use of a motor vehicle, an appropriate inquiry is whether there is a consistent pattern of use or availability of the other vehicle, thereby suggesting that the user relies on the likelihood that he or she will be permitted to use that vehicle at the times in question.").

more limited role in helping Johnson with the truck followed a meaningful pattern or was instead random or close to random, merely averaging something like 20 uses over two years.

¶24 As for the frequency-of-use factor, it is for a factfinder to determine how to interpret, and also how much weight to place on, Tyler's alleged total 20 or so uses of the truck over the course of two years, and Johnson's once a month reference, weighed in the balance with the other factors.

¶25 Moving to the factor regarding restrictedness of the availability of the truck to Tyler, there is no dispute that Johnson restricted Tyler's access and imposed limitations on Tyler's use. Tyler did not possess his own keys and required Johnson's permission to use the truck. On the other hand, while a reasonable factfinder could easily determine that Tyler could use the truck only for defined periods of time, it could also credit Johnson's statement that he gave Tyler permission to use the truck whenever Tyler asked. Further, there was the swimming outing with the truck. That is, on at least one occasion, Tyler used the truck to pick up a friend and drive it to recreational activity (and then on toward his own residence) that had no apparent connection to exhibitions or any other clearly identified purpose Johnson had in allowing Tyler to operate the truck.

¶26 Regarding the usualness factor, driving a vehicle and getting it washed are both self-evidently usual uses, and there appears to be no evidence of unusual maintenance or unusual driving. As far as Tyler's and Johnson's statements reveal, Tyler's interactions with the truck were limited to helping to maintain it and driving in ordinary ways. Thus, a reasonable factfinder could conclude that this factor in itself favors concluding that the truck was available for

Tyler's regular use, in contrast to the many reasonable inferences on other factors that could support a contrary conclusion.

¶27 We turn to Wisconsin Mutual's specific arguments in favor of determining that there was availability for regular use here. It points to isolated facts, often taken out of proper context, and to inferences that could be reasonably disputed in support of summary judgment in its favor. For example, Wisconsin Mutual emphasizes that, on the day of the accident, Tyler was driving Johnson's truck to get it ready for an exhibition as part of a larger pattern of Tyler helping Johnson in connection with exhibiting the truck. This potential-pattern argument is fair, as far as it goes, because these facts could support inferences in favor of a finding of regular use. However, the argument focuses narrowly on the truck-exhibition concept, and fails to account for the evidence as whole. Typical of its narrow arguments, Wisconsin Mutual asserts that "Tyler normally helps Charles with car shows." Putting aside vagueness in the term "normally," this assertion appears to ignore statements by Tyler and Johnson that a reasonable jury could credit to the effect that "normally" it was Tim, and not Tyler, who helped Johnson with the truck.[12]

---

[12] Wisconsin Mutual's characterization of Tyler "normally help[ing]" Johnson may rest on what is at best a disputable interpretation of the evidence. It appears to be based on the following exchange between Johnson and the adjustor interviewing him, which at least in the transcript is ambiguous:

> Q: … [D]oes [Tyler] normally help you with your car shows?
>
> A: Yeah, yeah, now and then, you know, not all the time but …

This exchange provides little weight for summary judgment purposes when understood in the context of evidence from Johnson and Tyler's statements noted in the text. The following is another example from Johnson's statement:

(continued)

15

¶28 Wisconsin Mutual further argues that Tyler's use of the truck was "significant in the context" presented by the nature of the truck itself, "an antique" that Johnson entered in exhibitions, and which Johnson stated he had not wanted used daily. As part of this argument, Wisconsin Mutual contends that Johnson placed the same restrictions on all truck users that he placed on Tyler. This argument appears to rest on drawing inferences in favor of summary judgment, which are not permissible. *See **Waters v. Pertzborn***, 2001 WI 62, ¶44, 243 Wis. 2d 703, 627 N.W.2d 497 ("On summary judgment" appellate courts "are required to draw all reasonable inferences in favor of the non-moving party."). Johnson did address in his statement the vintage nature of the truck, describing it as not being meant for "daily" use. *See* n.10, *supra*. Nevertheless, it is not clear from these general descriptions by Johnson that he restricted truck access for Tim and Johnson's brother to the same degree as he did for Tyler, who was after all a relatively new driver.

¶29 We now note two additional, related problems with Wisconsin Mutual's argument. First, we do not interpret the analysis used in cases such as ***Jackelen*** and ***Hochgurtel*** as focusing on the nature of the vehicle at issue (here, a vintage truck that was regularly entered in exhibitions) as a prism through which

---

Q: [D]oes Tyler … always help get the truck ready for the shows or just when … [?]

A: No. When he's around.

(Second ellipse in transcript.) Taken together, these exchanges illustrate the kind of ambiguity, and potential for competing inferences, which support our conclusion that summary judgment for either side is inappropriate.

each of the regular use factors must be viewed.[13]  In ***Hochgurtel***, for example, the truck at issue was used as part of a sod farm operation, including in making deliveries.  ***Hochgurtel***, 78 Wis. 2d at 82-83.  However, while the status of the truck as a sod truck helped to explain the details of the truck's availability for use, it was the concrete details of its use, and not its general nature, that governed the analysis.  *See* ***id.***  Here, the undisputed facts that it was a vintage truck used as an exhibition vehicle could support arguments that Johnson restricted Tyler's use to a high degree and allowed Tyler to use the truck only infrequently.  But its nature as an exhibition truck in itself does not necessarily limit what a reasonable factfinder might find was in fact Tyler's usual or frequent uses.  Put differently, the truck's nature in itself does not necessarily settle for a reasonable factfinder whether the availability of the truck to Tyler was sufficiently regular under the standard that

---

[13]  Brudos notes that Wisconsin Mutual's heavy emphasis of the nature of the vehicle at issue here may purport to be rooted in our explanation in ***Jackelen*** that the regular use analysis is vehicle specific.  But we agree with Brudos that nothing in that case demonstrates that coverage is unavailable to Tyler.  Explaining further, in ***Jackelen***, we concluded that

> the proper analysis under the "drive other car" exclusion focuses on the specific vehicle for which coverage is being determined and that the 'regular use' analysis looks to whether the specific vehicle was "available or furnished for the ... regular use" of the insured driving that vehicle when the accident occurred.

***Jackelen v. Russell***, 2015 WI App 93, ¶16, 366 Wis. 2d 255, 873 N.W.2d 265.  However, in making this point we were determining the proper subject of the regular use analysis in a specific context involving the spouse of a rental car company employee who was given only limited permission to borrow vehicles from a fleet of rental cars.  ***Id.***, ¶3.  Thus, our conclusion that the analysis properly focused on the specific vehicle for which coverage is claimed was intended as a contrast to an analysis that would consider the spouse's access to the fleet as a whole.  *See* ***id.***, ¶¶17-22.  Applied here, this vehicle-specific analysis focuses on the availability of *Johnson's* truck to Tyler, and not, as Wisconsin Mutual's analysis may suggest, on what would be typical for any antique truck used at vehicle exhibitions.  As we explain in the text, a reasonable factfinder could draw some inferences from the nature of Johnson's truck, but was not required to do so to the exclusion of the other evidence.

17

matters: would providing coverage for Tyler's use of the truck through Susan's policy be providing additional coverage for regular use?

¶30 Second, Wisconsin Mutual's broad argument based on Johnson allegedly placing the same restrictions on *all users* of the truck (not just Tyler) goes nowhere in supporting an argument for summary judgment in its favor, given the inconclusive evidence in the summary judgment materials. The text of the exclusion focuses on whether the truck was available for Tyler's "regular use," not on how the truck was regularly used by others. Based on this, if Wisconsin Mutual means to argue that the application of the regular use factors from *Hochgurtel* to a driver of a vehicle not listed in a policy will necessarily be informed by how those factors would apply to *other* users of the vehicle, we see no basis for such an argument. It will depend on the facts of a given case. In some cases, a reasonable factfinder may have a basis to determine that the vehicle at issue was not available to *any* driver for regular use based on the application of the factors noted above. Here, based on the summary judgment materials as they stand, a reasonable jury could find that no driver had regular use of the truck, or instead could find that one or more drivers had regular use.

¶31 In what Wisconsin Mutual purports to be a related argument, it attempts to support its position that there was regular use by comparing the undisputed facts here to those in persuasive authority, most prominently *Brouillette v. Firemen's Fund Insurance Co.*, 163 So. 2d 389 (La. Ct. App.

1964).[14] In ***Brouillette***, the insured, a firefighter, was injured while riding to a call in a firetruck that was the only firetruck available for use at the insured's fire station and was not listed in his personal insurance policy. ***Id.*** at 391. The Louisiana Court of Appeal concluded that an exclusion from coverage in the firefighter's personal policy for "vehicles 'furnished for the regular use' of the named insured" applied based on the fact that the insured was required by virtue of his occupation to ride on the firetruck. *See **id.*** at 391-92. The court acknowledged that the insured's use of the firetruck was sporadic and infrequent due to the variable timing of emergencies that would prompt a call. ***Id.*** at 392. At the same time, the court concluded, based on other considerations, that the vehicle was furnished for the firefighter's regular use. ***Id.*** Of potential interest here, the court applied a dictionary definition of "regular" to provide the following reasoning:

> [the firetruck] was furnished for the [insured's] 'regular' use in the sense that it was always furnished for the [insured's] use in attending every fire that occurred while he was on duty, which thus was a use steady or uniform in practice, a use in accordance with established or prescribed rule or principle (as contrasted with being furnished for use only on casual or random or unpredictable or chance occasion).

***Id.***

¶32    We assume without deciding that the interpretation of "regular use" in ***Brouillette***, which includes steady, uniform use and use according to an

---

[14] Wisconsin Mutual makes several other brief references to case law from outside Wisconsin. But these references are undeveloped in that Wisconsin Mutual fails to attempt to apply these cases to the facts here under existing Wisconsin law. Accordingly we do not address these references. *See **Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc.***, 2004 WI App 134, ¶16, 275 Wis. 2d 349, 685 N.W.2d 564 (this court generally does not address undeveloped arguments).

established principle, is consistent with the *Hochgurtel* factors. Even with that assumption, we are not persuaded that these considerations are dispositive when applied to the facts here. While there is evidence that could support a finding that much of Tyler's use of the truck was directed toward Johnson's practice of exhibiting the vehicle, we fail to see how a reasonable jury would be obligated to find that Tyler's access to the truck was uniform even as to this particular truck use. To repeat, there is evidence that Johnson did not give Tyler standing permission to use the truck, but also evidence that he granted Tyler permission to use the truck whenever Tyler asked. Further, there was the swimming outing, which was possibly spontaneous or possibly permitted so far as the summary judgment materials appear to suggest. It could be argued that Johnson's rules against Tyler driving the truck at night or taking it "joyridin[g]," or his limiting Tyler's truck use to times when Tim was not available, represented established rules or principles. Even so, the existence of such rules were forms of restriction that Wisconsin case law tells us could (depending on how the jury ultimately weighs the evidence) undermine the application of a regular use exclusion. *See Jackelen*, 366 Wis. 2d 255, ¶24 ("'If the use of the auto is sporadic *and rigidly restricted*, there is coverage under the policy.'" (emphasis added) (quoting *Hochgurtel*, 78 Wis. 2d at 82)).

## II. Omnibus Statute

¶33    Brudos makes an argument in the alternative to his position addressed above that the "drive other cars" exclusions in the policy could not apply based on the summary judgment materials and the applicable law. Brudos appears to assume that those exclusions could apply under their own terms based on what a reasonable trier of fact could find, and contends that the exclusions are invalid under the omnibus statute, WIS. STAT. § 632.32(6)(b). His argument is

20

apparently that § 632.32(6)(b), which generally prohibits insurers from excluding coverage for persons related by blood to the insured, applies here to preclude Wisconsin Mutual from relying on the "drive other cars" exclusions to exclude Tyler from coverage. We reject Brudos's argument because it is undeveloped.

¶34     The issue that Brudos purports to raise would present an issue of law that we review independently. *See **Vieau v. American Fam. Mut. Ins. Co. & Acuity***, 2006 WI 31, ¶11, 289 Wis. 2d 552, 712 N.W.2d 661 (addressing whether an "own-other-car" definitional exclusion was valid under WIS. STAT. § 632.32(6)(b) as an issue of law).

¶35     To explain Brudos's argument more fully, he contends that Wisconsin Mutual's policy operates "to exclude Tyler Noble from coverage that is afforded and benefits provided to the named insured and his mother, Susan Noble." Elsewhere in his briefing he frames the point this way: Wisconsin Mutual's policy "would have provided coverage to Susan Noble had she been driving [Johnson's truck]," and "[b]ecause Tyler Noble is a blood relative to Susan Noble … the Omnibus Statute prohibits an exclusion that denies him from coverage."

¶36     We begin with one large deficit in the argument. Brudos does not explain whether he asks us to conclude that WIS. STAT. § 632.32(6)(b) applies to bar only one or instead to bar both of the "drive other cars" exclusions identified by Wisconsin Mutual. Neither party explains how either exclusion treats Tyler relative to Susan. This is potentially significant. In the absence of an explanation on this point, Brudos's argument appears to be a non-starter with regard to one of the exclusions, and it is unclear what effect it would have for Brudos if he were to prevail on this issue as to only one exclusion. *See **Vieau***, 289 Wis. 2d 552, ¶22

21

(noting that the first step for analyzing the validity of an exclusion is determining whether § 632.32(6) prohibits it). The pertinent language in exclusion (10) in particular would appear to treat Susan and Tyler the same for purposes of exclusion from coverage. It applies to "use of any vehicle, other than your insured car, which is … available for regular use *by you or a relative*," that is, use by either Susan or Tyler. (Emphasis added.) Exclusion (11), in contrast, applies in pertinent part to cars "available for the regular use of any relative" with the additional clarification that "[t]his exclusion does not apply to [the named insured] when operating that vehicle." Brudos does not argue that interpreting exclusions (10) and (11) together, or in conjunction with other provisions in the policy, results in limiting to only relatives the exclusionary effect of exclusion (10).

¶37 Brudos may mean to argue that exclusion (10) violates WIS. STAT. § 632.32(6)(b) because it could apply to the facts of this case to exclude Tyler based on his regular use when compared to the hypothetical situation in which Susan drove the truck *only as would have been necessary to be involved in the accident with Brudos*, which clearly would not have constituted regular use. The argument would be that, whatever the differences between the availability of the truck to Tyler versus Susan, the difference in coverage outcomes between Tyler and Susan violates § 632.32(6)(b). However, Brudos fails to explain whether this is the hypothetical he intended to invoke, as opposed to one in which the availability of the truck to Susan and Tyler was similar.[15]

---

[15] Moreover, this possible "as applied" argument would appear to focus solely on whether there was a different coverage outcome between Susan and Tyler in a way that fails to account for how WIS. STAT. § 632.32(6)(b) interacts with § 632.32(5)(e) and the latter subpart's language addressing the "main purpose" of an exclusion. We explain in the text below why, even if Brudos had developed his argument along these lines, we would reject it based on how para. (5)(e) applies here.

¶38 Instead of properly explaining the basic elements of his position, Brudos merely points out that Wisconsin Mutual does not contest one premise of his omnibus statute argument, namely, that one or both of the particular "drive other cars" exclusions in the policy here treat Susan and Tyler differently. Wisconsin Mutual instead renews its argument that the exclusions are valid under WIS. STAT. § 632.32(5)(e), apparently accepting the premise that both exclusions bar coverage to Tyler that is afforded to Susan. Under this paragraph, policy provisions are allowed that "incidentally to their main purpose … exclude persons, uses or coverages that could not be directly excluded under" § 632.32(6)(b). However, Wisconsin Mutual's apparent concession regarding the treatment of Susan versus Tyler under the exclusions does not change the fact that Brudos has failed to lay out some of the first steps of how his argument could have merit. We will not "abandon our neutrality to develop arguments." *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

¶39 Moreover, even if we assume that one or both exclusions identified by Wisconsin Mutual are contrary to WIS. STAT. § 632.32(6)(b), we would reject Brudos's argument that the exclusion is nonetheless not permitted under § 632.32(5)(e). Instead, we would conclude that para. (5)(e) applies because Tyler's exclusion by virtue of his blood relation to Susan is incidental to the purposes of exclusions (10) and (11) as "drive other cars" exclusions. Instructive is our supreme court's reasoning in *Vieau* regarding the purposes of exclusions, which is given in the context of the omnibus statute.

¶40 At issue in *Vieau* was a policy definition of "relative," employed in the context of underinsured motorist coverage. The definition excluded otherwise qualifying blood relatives of the named insured when those relatives "own[ed] a

motor vehicle." *Vieau*, 289 Wis. 2d 552, ¶¶7, 22. Interpreting WIS. STAT. § 632.32(5)(e), the court noted that the statutory term "incidental" means "'[s]ubordinate to something of greater importance; having a minor role.'" *Vieau*, 289 Wis. 2d 552, ¶29 (alteration in *Vieau*) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)). Applying this definition of incidental, the court determined that the exclusion was "first and foremost" intended to accomplish the following as its "main purpose": "prevent[ing] resident relatives who own their own vehicles from piggybacking on the uninsured motorist … coverage and [underinsured motorist] coverage of a single insured." *Id.* The court noted that the exclusion there did not expressly exclude all blood relatives of the insured from coverage. Instead it narrowed the scope of coverage through use of a permissible "'qualifier,'" namely, vehicle ownership. This was permissible because the exclusion was tied to a "rational basis for restricting coverage" involving the topic of vehicle ownership. *See id.*, ¶¶29, 32-33. On this basis, the court ruled that § 632.32(5)(e) does not render the exclusion invalid. *Vieau*, 289 Wis. 2d 552, ¶40.

¶41 Applying the reasoning of *Vieau*, we reach the same conclusion regarding exclusions (10) and (11). The exclusions here can have the effect of excluding blood relatives from coverage, but they do not expressly restrict coverage from all such relatives. Instead, they preclude coverage only to those relatives of the insured who drive a vehicle not listed in the policy that is available for regular use to the relative. This narrowing of the exclusion of blood relatives has a rational basis in connection to the main purpose of the policy exclusions noted above. As stated above, that purpose is the prevention of a different kind of piggybacking, namely providing uncompensated coverage for unlisted but regularly used cars based on the coverage of listed vehicles.

¶42 Brudos attempts to distinguish *Vieau* by observing that, unlike the automobile liability coverage at issue here, *Vieau* concerned underinsured motorist coverage. As part of this distinction, Brudos notes that the court in *Vieau* expanded on the purpose behind the exclusion there to say that the excluded relatives "can consider for themselves how much [underinsured motorist] insurance to purchase to fully protect themselves from inadequately insured tortfeasors." *See id.*, ¶28. In making these observations, Brudos establishes only that the main purposes of exclusions in *Vieau* and those at issue here are somewhat different. But he fails to show that this difference affects our conclusion that the exclusion of some relative by the "drive other cars" exclusions here is incidental to its main purpose.

¶43 Perhaps related to his focus on the purpose of the exclusion analyzed in *Vieau*, Brudos makes another confusing argument against the applicability of WIS. STAT. § 632.32(5)(e). He narrowly characterizes the purpose of "drive other cars" exclusions, such as the one at issue here, as "prevent[ing] relatives from piggybacking and obtaining coverage on vehicles that they or a relative in the same household own, but do not insure." Based on this narrow description of the purpose of the exclusion, Brudos asserts that, because the truck here was owned by someone residing outside of Susan and Tyler's household, the exclusion "cannot operate to deny statutorily mandated coverage [that] the legislature intended" for the benefit of persons in Tyler's position. This argument fails for at least the reason that it does not capture the full scope of the purpose of drive other car exclusions as described in pertinent case law, which is evident in the text of one of the exclusions here. *See Westphal*, 266 Wis. 2d 569, ¶11 ("the purpose of the drive other cars exclusion is … to exclude coverage of a vehicle that the insured owns *or frequently uses* for which no premium has been paid" (emphasis

added)). To repeat, exclusion (11) applies to vehicles "owned by" the insured's "relative[s]" "*or* available for the regular use" by them. (Emphasis added.)

## CONCLUSION

¶44  For all of these reasons, we reverse the circuit court's order for declaratory and summary judgment and remand for further proceedings.

*By the Court*.—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.